# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Wade*, 2013 IL App (1st) 112547

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON WADE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-2547 |
| Filed | March 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court rejected defendant's contention that his counsel was ineffective in failing to seek a reversal on speedy trial grounds where such a motion would have been futile, and although his mittimus was amended to correctly reflect a conviction for possession of a controlled substance with intent to deliver, rather than manufacture or delivery of a controlled substance, the three-year term of mandatory supervised release was upheld on the ground that he was sentenced as a Class X offender due to his background. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-14982; the Hon. Timothy Joseph Joyce, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |

Counsel on
Appeal

Rachel Moran, of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Jon Walters, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Neville and Justice Sterba concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant contends his conviction must be reversed where it was obtained in violation of his statutory right to a speedy trial and where his trial counsel was ineffective for failing to move for dismissal of the charges based on those grounds. Defendant also contends his three-year mandatory supervised release term must be reduced to a two-year term because he was convicted of a Class 1 felony, although he was sentenced as a Class X offender. Lastly, defendant requests, and the State concedes, that his mittimus be corrected to reflect he was convicted for possession of a controlled substance with intent to deliver.

¶ 2                              BACKGROUND

¶ 3     On July 24, 2009, undercover police officer Jose Velez and his partner, Officer Robert Ruiz, arrested defendant after observing him engage in two narcotics transactions. Defendant was charged with Class 1 possession with intent to deliver 1 to15 grams of heroin, as well as Class X possession with intent to deliver heroin within 1,000 feet of a church. 720 ILCS 570/401 (c)(1), (b)(1) (West 2010).

¶ 4     The day after defendant's arrest, July 25, 2009, the court held a bond hearing and set defendant's bond at $100,000. Defendant's appointed counsel filed a written demand for trial that day. Defendant did not post bond and remained in custody from the date of his arrest until his trial on June 2, 2011.

¶ 5     On August 18, 2009, the State filed its information. On September 3, 2009, defendant was arraigned and his attorney agreed to a continuance to obtain pretrial discovery. Between September 25, 2009, and April 22, 2010, the matter was continued nine more times by agreement of the parties. During that time, the parties completed discovery, engaged in plea negotiations and the court ordered a fitness examination of defendant. On April 22, 2010, the parties scheduled a mutually agreeable trial date of June 9, 2010.

¶ 6     The case went to trial on June 2, 2011. Following the bench trial, defendant was convicted of possession of a controlled substance with intent to deliver, a Class 1 offense,

and sentenced to eight years' imprisonment as a Class X offender because of his criminal background. Defendant's counsel filed a motion for a new trial, arguing the State failed to prove defendant guilty beyond a reasonable doubt. On July 6, 2011, defendant filed a *pro se* motion claiming ineffective assistance of counsel. In response to the court's questioning, defendant stated that his witness, Michael Ball, would have testified that he and defendant were buying drugs when the officers arrested defendant and that defendant was not involved in the sale of any drugs. Defendant also complained that, "[w]hen I was coming *** to court on my five times they were steady getting status dates of trial, and [Ball] was there, so after he died, you know, then the whole program changed. They was ready for trial, you know what I mean?" The court found defendant's claims of ineffective assistance were "without basis."

¶ 7    Defendant timely appealed.

¶ 8                                    ANALYSIS

¶ 9                    Speedy Trial and Ineffective Assistance Claims

¶ 10    Defendant contends his conviction must be reversed because it was obtained in violation of his statutory right to a speedy trial. Defendant contends his trial counsel was ineffective for failing to move to have the charges dismissed based on this violation.

¶ 11    Defendant was brought to trial on June 2, 2011, 678 days after his arrest on July 24, 2009. Defendant remained in continuous custody the entire time. Defendant argues that of those 678 days, at least 145 days are attributable to the State and its unpreparedness for trial.

¶ 12    The State contends defendant received effective assistance of counsel where the record shows his trial began within the 120-day statutory period and, therefore, had his counsel filed a motion to dismiss on speedy trial grounds, it would have been futile.

¶ 13    To prove ineffective assistance of counsel, the defendant must allege facts showing counsel's representation was both objectively unreasonable and counsel's deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the two-part test developed in *Strickland*). The defendant bears the burden of demonstrating he received ineffective assistance of counsel. *People v. Burks*, 343 Ill. App. 3d 765, 774 (2003). To do so, the defendant must overcome a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *People v. Pecoraro*, 175 Ill. 2d 294, 319-20 (1997). In determining the adequacy of the defendant's legal representation, we consider the totality of the circumstances. See *People v. Long*, 208 Ill. App. 3d 627, 640 (1990).

¶ 14    The failure of counsel to raise a speedy trial violation cannot satisfy either prong of *Strickland* where there is no lawful basis for arguing a violation. Accordingly, we must first determine whether defendant's speedy trial rights were violated, before addressing whether counsel was ineffective for failing to raise the issue.

¶ 15    In Illinois, the right to a speedy trial is protected by both the constitution and statute. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2010); see *People v. Crane*, 195 Ill. 2d 42, 48 (2001). Section 103-5(a) of the Code of Criminal

Procedure of 1963 (hereinafter Speedy Trial Act) provides:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant \*\*\*. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2010).

Here, defendant only raises a violation of his statutory right to a speedy trial, not his constitutional rights.

¶ 16    The Speedy Trial Act provides that an accused in custody must be brought to trial within 120 days from the date defendant was taken into custody. 725 ILCS 5/103-5(a) (West 2010). It is the State's duty to bring the defendant to trial within the 120-day period. *People v. Mayo*, 198 Ill. 2d 530, 536 (2002). The speedy trial period is suspended during any delay caused by the defendant (725 ILCS 5/103-5(f) (West 2010); *People v. Izquierdo-Flores*, 332 Ill. App. 3d 632, 636 (2002)), and the defendant bears the burden of affirmatively establishing a speedy trial violation by showing that the delay was not attributable to him or her (*People v. Cooksey*, 309 Ill. App. 3d 839, 843 (1999)). A delay is caused by the defendant and charged to him or her when "his [or her] acts caused or contributed to a delay resulting in the postponement of trial." *People v. Kliner*, 185 Ill. 2d 81, 114 (1998). A "delay" for purposes of the Speedy Trial Act is "a term of art used to describe any event that places a trial date beyond the 120-day period." *People v. Cordell*, 223 Ill. 2d 380, 388-89 (2006). Our supreme court explained:

> "Should a defendant wish to employ section 103-5(a) as a shield against any attempt to place his trial date outside the 120-day period, he is free to do so. To allow section 103-5(a) to be used as a sword after the fact, to defeat a conviction, however, would be contrary to our holding in [*People v. Gooden*, 189 Ill. 2d 209 (2000),] and allow defendants to use a procedural loophole to obstruct justice." *Cordell*, 223 Ill. 2d at 390.

¶ 17    "A simple request for trial, before any 'delay' is proposed, is not equivalent to an objection for purposes of section 103-5(a)." *Cordell*, 223 Ill. 2d at 391 (citing *People v. Peco*, 345 Ill. App. 3d 724, 734 (2004) ("while no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a *speedy* trial in the record" (emphasis added))). Under section 103-5(a), the defendant bears the burden to take affirmative action when he or she becomes aware that the trial is being delayed. To allow a request for trial, made before any delay was proposed, to qualify as an objection to the delay not yet proposed gives defendants a sword to use after the fact to overturn their convictions, contravening the intention of section 103-5(a). *Cordell*, 223 Ill. 2d at 390.

¶ 18    The State concedes it was responsible for 41 days of pretrial delay in defendant's case, but attributes the remaining delay of 637 days to defendant. The State takes responsibility for the 41-day delay from July 24, 2009, the date of arrest, to September 3, 2009, the date of defendant's arraignment.

¶ 19    Both defendant and the State agree that from September 3, 2009, to June 9, 2010, a 279-day delay is attributable to defendant and, therefore, does not count against the speedy trial term.

¶ 20 Defendant contends the 75-day period between June 9, 2010, and August 23, 2010, is attributable to the State for purposes of the speedy trial term. The State argues that even though the case was set for trial on both June 9 and July 13, 2010, and the defense answered ready to proceed to trial on those days and the State did not, the State is not responsible for that delay because defendant's counsel agreed to continuances on both of those dates and failed to file a written trial demand.

¶ 21 Defendant argues that he did not agree to any "delay" as defined by *Cordell* when the State requested a new trial date on both June 9 and July 13, 2010. Neither request delayed his trial beyond the speedy trial period because the new dates still fell within the 120-day period and, therefore, he was not required to "take affirmative action" by objecting to the new trial dates. See *Cordell*, 223 Ill. 2d at 388-89.

¶ 22 The State cites *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006), and *People v. Kliner*, 185 Ill. 2d 81, 115 (1998), for the proposition that "an agreed continuance [generally] constitutes an affirmative act of delay attributable to the defendant." Defendant agrees with this proposition and acknowledges that all of the dates on which he agreed to a continuance, rather than a trial date within the 120-day period, are attributable to him.

¶ 23 Defendant argues that there is a crucial difference between a continuance and setting a trial date within the 120-day period. Agreement on a trial date within the 120-day period furthers the purpose of the Speedy Trial Act by scheduling the trial within the 120-day period, unlike continuances, which do not. Defendant argues that *Woodrum* and *Kliner* are not helpful because neither addressed which party the delay should be attributed to when the delay is because of an agreement to a trial date within the 120-day window.

¶ 24 Defendant acknowledges that an agreement to a date outside the 120-day period, whether by continuance or in setting a new trial date, is a delay attributable to the defendant unless he makes a written or oral demand for trial. *Cordell*, 223 Ill. 2d at 388-92. Defendant only contends that an agreement to a trial date inside the 120-day period for the Speedy Trial Act is not a "delay" attributable to him, citing *People v. Workman*, 368 Ill. App. 3d 778 (5th Dist. 2006), *People v. LaFaire*, 374 Ill. App. 3d 461 (3d Dist. 2007), and *People v. Zeleny*, 396 Ill. App. 3d 917 (2d Dist. 2009).

¶ 25 Defendant agreed to continuances on both June 9 and July 13, 2010. On July 9, 2010, the State requested a continuance because of the recent discovery of 911 tapes which neither party had. At the conclusion of the proceeding, the court stated the continuance was "[b]y agreement for bench *** 7/13." On July 13, the 911 tapes were still not available. Defense counsel answered ready for trial, but then suggested the next court date of August 23, 2010. The court stated, "[t]his will be apparently by agreement to August 23 for bench." Defense counsel did not object to either continuance.

¶ 26 Defendant contends the agreed continuances are attributable to the State because the case was set for trial on those dates and, therefore, he was merely acquiescing to a trial date within the 120-day period, which did not toll the statutory term. Nothing in the plain language of section 103-5 supports defendant's interpretation. As our supreme noted in *Cordell*, the statute "places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed." *Cordell*, 223 Ill. 2d at 391. To invoke speedy trial rights, the

statute requires a clear objection and demand for trial from defendant. There is no language in the statute suggesting this requirement does not apply when the case has been set for trial. An agreed continuance tolls the speedy trial period, whether or not the case has been set for trial. Defendant's contention illustrates what the *Cordell* court sought to prevent, the use of section 103-5(a), not as a shield to protect defendant's right to a speedy trial, but as a sword to defeat his conviction. See *People v. Hampton*, 394 Ill. App. 3d 683, 689 (2009) (defendant employed similar strategy).

¶ 27 Moreover, defendant offers no case law supporting his contention that an agreed continuance does not toll the speedy trial period and is, thus, a delay attributable to the State when a case has been set for trial; no authority addressing the distinction he makes between mere continuances and agreement to trial dates; and no analysis of the difference between agreements to trial dates within the 120-day window versus those outside that 120-day period, a difference defendant argues has significance in determining to whom the delay is attributable.

¶ 28 Defendant's reliance on *Workman* is unpersuasive. In *Workman*, the court held that, under the unique circumstances of the case, the State exercised due diligence in seeking to obtain DNA tests that were material and, therefore, the trial court properly granted the State's request for a 60-day continuance, which tolled the 120-day speedy trial period. *Workman*, 368 Ill. App. 3d at 786-87. In support of his position, defendant relies on the following statement from the court:

"Although we acknowledge that a defendant is considered to have agreed to any delay unless he or she objects by demanding a trial [citation], we find that Workman had not agreed to any 'delay' in this case. She had merely agreed that the original trial setting of June 13, 2000, which was within the speedy-trial time limit, was amenable with her schedule. This agreement, however, did not toll the speedy-trial 'clock.' " *Workman*, 368 Ill. App. 3d at 785.

Defendant contends that the court, when faced with whether to charge the delay between the hearing date and the trial date to the defendant, found that agreeing to a trial date within the speedy trial term is different from agreeing to a continuance and, therefore, a different result is warranted. *Workman*, 368 Ill. App. 3d at 785. We find defendant's interpretation to be too broad. The decision in *Workman* is based on the specific facts before the court and cannot be read to generally support the conclusion that an agreed continuance on a trial date should be treated differently than a mere agreed continuance. In *Workman*, the court merely states that the new trial date would be amenable to defense counsel's schedule, but fails to specify the facts the court relied on in determining that defense counsel was not agreeing to a continuance. We find *Workman* unhelpful in deciding the matter before us. Moreover, *LaFaire* and *Zeleny* are distinguishable as well because section 103-5(a) was not applicable to those cases. *LaFaire*, 374 Ill. App. 3d 461; *Zeleny*, 396 Ill. App. 3d 917 (defendants were on bail, section 103-5(b) applied).

¶ 29 Here, defendant failed to make a proper demand for trial and agreed to the continuances on June 9 and July 13, 2010. That the case had been set for trial on those dates is of no moment. The 75-day delay between June 9, 2010, and August 23, 2010, is attributable to

defendant for purposes of the speedy trial term. With the delays attributable to defendant, he is unable to show he was tried beyond the 120-day statutory term of the Speedy Trial Act.

¶ 30 Defendant cannot base a claim of ineffective assistance of counsel on his attorney's failure to claim a speedy trial violation where no violation of defendant's rights occurred and, therefore, raising the issue would have been futile. See *Cordell*, 223 Ill. 2d at 392-93; *Peco*, 345 Ill. App. 3d at 735-36.

¶ 31                          Mandatory Supervised Release Term

¶ 32 Defendant contends the trial court improperly imposed a three-year term of mandatory supervised release where it was required to sentence defendant as a Class X offender based on his background, but he was actually convicted of a Class 1 offense of possession of a controlled substance with intent to deliver. Defendant contends he should only have to serve the two-year MSR term that attaches to Class 1 offenses.

¶ 33 The State contends defendant has forfeited review of this issue because he failed to object at sentencing or raise it in his motion to reconsider his sentence. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430-31 (2006) (issues raised for the first time on appeal are forfeited).

¶ 34 Defendant argues his sentence was imposed in violation of statutory authority and, therefore, may be challenged at any time. Defendant contends the three-year MSR term violated section 5-8-1(d)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-1(d)(2) (West 2010)), which limits the MSR term for Class 1 felonies to two years and, therefore, his sentence is void. Defendant argues the plain language of the statute makes clear the length of his MSR term is based on the classification of the felony conviction, not the classification of the sentencing range.

¶ 35 Defendant argues the decision in *People v. Pullen*, 192 Ill. 2d 36 (2000), should be read to hold that his three-year MSR term should be reduced to the two-year term applicable to Class 1 felonies. In *Pullen*, the offenses were mandatorily enhanced to Class X for sentencing, but the aggregate maximum sentence was limited to the maximum available for the underlying Class 2 felonies, despite the defendant being subject to Class X sentencing. *Pullen*, 192 Ill. 2d at 46. Defendant argues that because his offense was also mandatorily subject to Class X sentencing, just like in *Pullen*, his sentence, including the MSR term, should be limited to that available for the underlying felony, a Class 1 felony. Defendant contends that because the language of the mandatory Class X statute did not affect the maximum sentence available in *Pullen*, it should not affect the MSR term he received. Defendant requests that based on *Pullen*, we order his MSR term be reduced to two years, the term available for Class 1 felonies.

¶ 36 This court has repeatedly rejected claims that *Pullen* requires the imposition of a two-year MSR term, rather than a three-year term when defendant is convicted of a lower class offense but sentenced as a Class X offender. See *People v. Lee*, 397 Ill. App. 3d 1067, 1072-73 (2010); *People v. McKinney*, 399 Ill. App. 3d 77, 82-83 (2010) (both courts considered the application of *Pullen* and held a defendant sentenced as a Class X offender is required to serve the Class X three-year MSR term).

¶ 37 This court has addressed this issue in multiple districts and has repeatedly rejected

defendant's argument, holding instead that, under these circumstances, the statutes require the imposition of the three-year MSR term applicable to Class X sentences. See, e.g., *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (1st Dist. 2011); *People v. Allen*, 409 Ill. App. 3d 1058, 1078 (4th Dist. 2011); *People v. Lampley*, 405 Ill. App. 3d 1, 13-14 (1st Dist. 2010), *vacated on other grounds*, *People v. Lampley*, 2011 IL 111572 (Ill. Sept. 28, 2011) (supervisory order); *People v. Holman*, 402 Ill. App. 3d 645, 652-53 (2d Dist. 2010); *People v. Watkins*, 387 Ill. App. 3d 764, 767 (3d Dist. 2009); *People v. Smart*, 311 Ill. App. 3d 415, 417-18 (4th Dist. 2000); *People v. Anderson*, 272 Ill. App. 3d 537, 541-42 (1st Dist. 1995).

¶ 38 We are unpersuaded that departure from these well-reasoned decisions is appropriate. Accordingly, we hold defendant was properly ordered to serve a three-year MSR term.

¶ 39                                    Correction of Mittimus

¶ 40 Lastly, defendant contends, and the State concedes, that defendant's mittimus must be amended to correctly reflect his conviction for possession of a controlled substance with intent to deliver, rather than manufacture or delivery of a controlled substance. The record shows defendant was convicted of possession of a controlled substance with intent to deliver one gram or more, but less than 15 grams, of heroin in violation of section 401(c)(1) of the Controlled Substances Act (720 ILCS 570/401(c)(1) (West 2010)). Defendant's mittimus reflects the proper statute defendant violated in support of his conviction; however, it incorrectly lists the offense as manufacture or delivery of heroin. Accordingly, under authority of Illinois Supreme Court Rule 615(b)(1), we order defendant's mittimus be corrected to accurately reflect his conviction: possession of a controlled substance with intent to deliver. See *People v. Blakney*, 375 Ill. App. 3d 554, 560 (2007) (where wrong offense is listed, this court may order corrected mittimus be issued to reflect actual offense of conviction).

¶ 41                                    CONCLUSION

¶ 42 Defendant's claim of ineffective assistance of counsel fails because any motion for reversal on speedy trial grounds would have been futile. Accordingly, we affirm defendant's conviction. The trial court properly sentenced defendant to a three-year term of mandatory supervised release. Defendant's mittimus must be amended to reflect his actual conviction for possession of a controlled substance with intent to deliver.

¶ 43 Affirmed; mittimus corrected.