2016 IL App (3d) 140286
Opinion filed April 27, 2016\

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-14-0286 Circuit No. 13-CF-452 |
| | ) | |
| GREGORY L. LILLY, | ) ) | Honorable David A. Brown, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Presiding Justice O'Brien dissented, with opinion.

**OPINION**

¶ 1        Defendant, Gregory L. Lilly, appeals his convictions of burglary and retail theft. Defendant contends that his statutory speedy trial right was violated because the State failed to bring him to trial within 120 days as required by section 103-5(a) of the Code of Criminal Procedure of 1963 (Speedy Trial Act) (725 ILCS 5/103-5(a) (West 2012)). Defendant argues that the trial court abused its discretion when it attributed several delays to defendant and denied his motion to dismiss the charges. We affirm.

¶ 2                                    FACTS

¶ 3    On May 24, 2013, defendant was arrested, taken into custody, and later charged by indictment with burglary (720 ILCS 5/19-1 (West 2012)) and retail theft (720 ILCS 5/16-25(a)(1) (West 2012)).  Defendant remained in custody pending his trial.

¶ 4    On June 6, 2013, the trial court appointed a public defender to represent defendant and set August 19, 2013, as the date of defendant's jury trial.

¶ 5    When the parties appeared in court on August 19 the following discussion occurred:

"THE COURT: [Defendant], you're here with your attorney, Mr. Rose, and Ms.—Mr. FitzSimons is here for the People.  Matter was set for trial, and we had another trial that was set that was going to bump yours down the line a little bit, but we can't go on any of them now because I've got to be gone the last half of the week, so we need to give you new court dates, is that right?

MR. ROSE [Defense counsel]: It is in part, Judge.  There's also a Motion for Bond Reduction that was filed in the matter that perhaps we could do some time either today or this afternoon, whenever is convenient.

[Defendant] is obviously interested in pursuing the matter with some rapidity."

Then, the following colloquy occurred:

"THE COURT: ***  Let's do this, can we continue it over on the defendant's motion, if you will indicate that—is there some discovery that needs to be completed or is there—

MR. ROSE: I've received the video but I haven't had the opportunity to review it yet.

2

THE COURT: Let's continue it over and then bring you back next week so we can do your—or later this week, no, bring you back next week to do your Motion for Bond Reduction, okay?

THE DEFENDANT: That's fine.

THE COURT: That way, if you have some people that want to be here, you can have them come on the day that they need to, as opposed to just do it right now.

THE DEFENDANT: That's fine.

* * *

THE COURT: Okay, All right, why don't we go ahead and put it on something next week?

[THE STATE]: Yes, sir.

THE COURT: Want to do it on a Wednesday or Thursday?

[THE STATE]: That's fine, either one, Judge.

THE COURT: Let's bring him over on Wednesday at 3:00.

MR. ROSE: That's fine.

THE COURT: So scheduling conferences are Wednesdays at 3, so we'll just put your Motion for Bond Reduction next Wednesday at 3:00.

THE DEFENDANT: That's fine.

* * *

THE COURT: All right, now your court dates, however, are—

3

[THE STATE]: Judge, I'm sorry, I didn't know what the regular course was.

THE COURT: October 30th and November—

THE CLERK: October 23rd, in custody.

THE COURT: October 23rd.

THE DEFENDANT: Is it possible, I really do want to use my 120, because I lost a lot being in jail with this bond that I have. I was a working man and had a lot going on, positive things.

THE COURT: How long have you been in jail?

[THE STATE]: 88 days.

THE DEFENDANT: 88 days, I guess. I lost everything, man, I mean, this is the first time in my life I ever did this well, man, I just want to be back out, I mean, granted, I'm not, you know, no violent person or anything.

THE COURT: Well, I suppose I could squeeze it in, but—is it 88 days?

[THE STATE]: Yes, sir.

THE COURT: Some time in the next 32 days.

THE CLERK: September 16th.

THE COURT: Okay, September the 16th, and scheduling conference—

THE CLERK: September 4th.

THE COURT: September 4th, is that a Wednesday?

THE CLERK: Yes.

4

THE COURT: September 4th, scheduling conference, September 16th, jury trial. Come back on the 28th for a bond reduction.

MR. ROSE: I don't know if we need a scheduling if we're, in effect, the week before. I don't care, I'm fine with it, whichever way.

THE COURT: We can pretty much do it at the bond reduction hearing. All right, we'll see you back on those dates.

THE DEFENDANT: Okay, thank you, thank you, sir."

¶ 6 The written order corresponding to this date includes a notation "[t]he Defendant move(s) for a continuance," the matter was continued to August 28 for both a scheduling conference and a hearing on defendant's motion for bond reduction, and the trial was set for September 16.

¶ 7 On August 28, the trial court entered a written order that the matter was continued to September 6 on defendant's motion for bond reduction. The order also indicates that the State and defense counsel were present, but does not state that defendant was present. The record on appeal does not include a report of the proceedings from this day.

¶ 8 The parties appeared again in court on September 6 for the hearing on defendant's motion for bond reduction. At this time, defendant had been reassigned a new public defender. The trial court explained the sentence defendant faced and asked defendant, "[t]hen it seems to me that if Mr. Sheets [defendant's new attorney] is just starting with your case, that it would be—it would seem unrealistic to me that you would want to have your trial on the 16th. Is that the case or what?" Defendant responded,

"First of all, Your Honor, I had no idea that Mr. Mark Rose [defendant's previous counsel] recanted from my case. He never told me. I never spoke to Mark Rose until August the 7th. I've been incarcerated since May 24th. I sent

5

him a list of witnesses. He told me that—I wanted the officer that testified that has been indicted for rape who also testified at the Grand Jury, and he said he would not represent me if I called this witness. I had no idea that Mark Rose was no longer my lawyer at all. As far as I knew, he was still my lawyer.

THE COURT: Well, apparently he is not. I don't assign them.

THE DEFENDANT: So I don't know what—what happened? I mean, I was exercising my 120. I talked to him August the 28th when we was waiting to get in for the bond reduction, and I never got called in. And now I come in here, and this man here is my lawyer. I never had a clue about it at all. No one told— told me anything at all.

***

[THE COURT]: So what I'm asking you is that—what your—Mr. Sheets asks—and it seems to be logical to me, that's why I brought you out here—is to set you on a different court date and bring you back for a bond motion—a hearing on bond reduction motion on the 26th.

THE DEFENDANT: The 26th? Your Honor, Mark Rose had brought me over here three different times for bond reductions. I never received one. I've been—I wrote Mark Rose, called him several times—

THE COURT: Let's get off the Mark Rose business. He's done. He's not your attorney anymore. This is your attorney. No what do you want to do?

THE DEFENDANT: I want to go to trial on the 16th.

THE COURT: I don't think that is—what do you want to do, [the State]?

[THE STATE]: Judge, I'm ready to go on the 16th.

6

THE COURT: Mr. Sheets?

MR. SHEETS: Judge, I renew simply my request to continue it in the usual course. I'd say for the record simply for me to acquire the case today and be prepared with this man facing a Class X, despite whatever he may think about his 120 which I respect, the simple fact of the matter is I think it would be ill-advised to press it knowing what he could face and the fact that I would only have it for a matter of days. And so I make the request on the record, and I'm prepared to live with whatever decision the Court makes.

* * *

THE DEFENDANT: Okay. I had sent a list of witnesses to the Circuit Clerk that I wanted Mark Rose to call, which is—John McCavitt was one of the main witnesses that I want—

THE COURT: I'm going to tell you this one more time. I'm not interested in what you did with Mr. Rose. That is a day from yesteryear. You want a trial on the 16th with this lawyer that you just met moments ago? Perhaps that's what we'll do. But what I think you're saying, [defendant] is, 'I want my case over with a good result.' *** So if you somehow magically believe that it's in your best interests to have a trial with a lawyer you've just met on the 16th, then I suppose we'll take that up on the 16th. But he has indicated, Mr. Sheets, that he would like to have an opportunity to review your case and be prepared for it, and if you indicate that there are witnesses that you want to call, valid ones, then I can't expect Mr. Sheets to digest whatever it is you want to say, do it, be prepared, but maybe you think he can do that. But if you want your case on the 16th, we'll

7

address it on the 16th, and if—if you want to give Mr. Sheets an opportunity to prepare, that's okay, too. ***

* * *

THE DEFENDANT: I mean, it just seems like all I'm trying to do is just get a fair trial. Mark Rose completely wouldn't even speak to me whatsoever. I never—

THE COURT: See you on the 16th. All roads lead back to Mr. Rose."

¶ 9 Ultimately, the trial court did not change the date of defendant's trial. There is no written order for this hearing.[1]

¶ 10 On September 16, the parties returned to court for trial. However, the trial court informed the parties that the case had been transferred to the chief judge because the court had received a *pro se* letter from defendant that the court had construed as a motion to substitute judges.[2] As a result, the trial would have to be continued to a future date so the chief judge could rule on defendant's motion. Defendant responded, "[f]irst of all, I object to a new judge. I didn't say that I was complaining about the judge. I also object to getting me a new attorney without having an open court hearing." Over defendant's objection, the trial court continued the matter to

---

[1]This was the last time this specific motion for bond reduction (prepared by defendant's original counsel) is mentioned in the proceedings, there is no evidence in the record that this motion was ever ruled on. As will be discussed below, defendant would later file his own *pro se* motion for bond reduction, which the trial court granted.

[2]The letter also claimed that defense counsel provided ineffective assistance of counsel. The trial court did not rule on this claim.

a future date pending the resolution of defendant's motion. The next day, the chief judge entered a written order denying defendant's motion to substitute judges.

¶ 11    Next, the parties returned to court on September 23. Initially, the trial court informed the parties that the matter could potentially proceed to trial that day. Defendant then told the trial court that he wished to proceed *pro se* in his defense and that he was ready to proceed to trial. Defendant told the court,

> "Last week, when I wrote the complaint, I wrote it because I felt like my attorney shouldn't be able to just get on with my case, because, it wasn't nothing personal against you, because I do respect the honorable judge. It was just, I was afraid I can't get a fair trial. That's just how I felt. When I came in Monday ready for trial, he turned the complaint into a motion for a substitution of judge and that shouldn't have hindered my 120. You know, it shouldn't have hindered it.
>
> My 120 was over with Friday, and, even with a motion to substitute judge, [Y]our Honor, which this is what I think is, that there should be another judge on standby to take me to trial."

¶ 12    The trial court responded, "[t]hat's not going to happen[,]" then admonished defendant regarding his decision to proceed *pro se*, but did not specifically grant or deny defendant's request to discharge his attorney. When the trial court finished admonishing defendant, the following colloquy regarding defendant's speedy trial claim occurred:

> "THE COURT: *** I have tried to make it clear to [defendant] that his insistence on squeezing his trial into his 120 days is something that he is entitled and allowed to do, but that it has potential bad consequences to it.

9

So the record is clear, it appears to me that [defendant] was arrested. He was found indigent. He was appointed the public defender. Mr. Penn appointed Mr. Rose to represent [defendant]. [Defendant] doesn't like that Mr. Rose is no longer his lawyer, but, apparently, there was a falling out between the two. [Defendant] seems to think that there was not. Clearly, Mr. Rose is the one who said he didn't want to represent [defendant] anymore.

There was a change in [defendant], in that representation. Mr. Sheets was appointed. [Defendant] indicates he doesn't want Mr. Sheets to represent him because he hasn't taken time, had enough time or allowed time to talk with him enough or understand his case enough. I've already indicated, so I'm not saying anything that I haven't said before, [defendant], that you want two things and I can only grant you, well, you actually want three things. You want your case to be tried within the 120 days assessed against you; you want a lawyer that you either like or feel comfortable with; and you want a good result.

I can only give you one of those and that is to have your trial within the 120 days that are assessed, would be assessed against you. You've had two assistant public defenders now, and it seems to me that your, those do not appeal to you. The judge doesn't appeal to you. A lot of things don't appeal to you, but we're going to have a trial. So, you have asked me to let you do this yourself. We've covered the things that I think we need to cover. I've tried to address the case law and statutes, and my recollection from our last court date was that [the State] indicated that you were at 88 days when Mr. Rose, when there was a separation of you and Mr. Rose, and that the time since then, which would be last

10

Monday, was 88 days and that even if the time between last Monday and today was to be assessed against the People and not against you, that would still put us at 95.

THE DEFENDANT: We were at 106 days when we transferred lawyers on September 6. It was 88 days on August 19. It was at 88 days.

[THE STATE]: On August 19, Mr. Rose moved for a continuance. This is before Mr. Rose got off the case.

THE COURT: So, on August 19, Mr. Rose, where we at?

THE DEFENDANT: On August 19. I raised my hand.

THE COURT: We're not talking yet. On August 19, it indicates here that the defendant moved for a continuance.

THE DEFENDANT: That is not true.

THE COURT: And [the State] is here. Mr. Rose was here. [Defendant] was here. The matter was continued on the defendant's motion to August 28 at three o'clock, and, for scheduling and bond reduction motion. So then the matter was, that was to be on August 28. On August 28, it says the matter is continued to September 6 at eleven o'clock for bond reduction motion, but, oh, pardon me.

Back on August 19, it said that the matter was set for August 28 for scheduling conference and bond reduction motion. And set for September 16 at 9:30 for jury trial. It says that this was, the defendant had moved for a continuance.

So, when Mr. Rose was your lawyer, I'm just, I'll give you a chance here [defendant]. When Mr. Rose was your lawyer on August 19, it says here that the

11

defendant moves for continuance and so it was set for September 16 for trial and to bring you back on August 28 before that so that the Court can consider a bond reduction motion. At the bond reduction motion, it says here that the matter for the bond reduction was continued until September 16. It didn't change the September 16 date.

So, when Mr. Rose moved to continue on August 19 and your trial date was set for September 16, those days were not assessed against the State. So now, September 16 came, which was last Monday, and I interpreted your written material as being a motion, among other things, a motion to substitute judge. That's gone to the chief judge. That's been addressed, and here we are. Go.

THE DEFENDANT: Your Honor, when I came here August 19, which we need to check the transcript, remember, I asked you, I said, your Honor, I would like to exercise my 120. That's when you said, how many days do we have left? They said something like 32 or something of that nature. When I first came in, he, they was going to continue.

I raise my hand to your Honor honorable judge, and I said, I would like to exercise my 120. You told me, okay. How many more days do we have left, and you set it for September 16. You were going to set it for September 4, and Mark Rose said let's go straight to the trial date. That's when you set it for September 16. However, you still scheduled me for a bond reduction on, I mean, a bond reduction on August 28 which I never came inside the courtroom. I think you had some kind of trial going on.

12

But we did not, the defense did not take a continuance, not while I was in here, because I raised my hand to your honorable judge. I said, your Honor, I would like to exercise my 120. I lost too much. I'm trying to get back to my life. You said, that's when [the State] said that we have 88 days then. Then you said we have something like 32 more days left. That's when you set my date for September 16. The transcript should be able to tell us this. I mean, I kid you not.

THE COURT: You had 88 days apparently on the 19th. [The State] contends that setting it on the 16th, between the 19th and the 16th of September, 19th of August, 16th of September, that was on defendant's motion. That's what it says in the file anyway. ***

*** 

THE DEFENDANT: That continuance wasn't with [defendant] in the courtroom. I had no idea about it. I was adamant in the courtroom I wanted 120, fast and speedy trial. You sat there and said I have 88 days. Then you give me Mr. Sheets when I was at 106 days without me knowing I had a new lawyer. So, I mean, you asked me, did I want to get a continuance to get him, to give him an opportunity to investigate my case?

THE COURT: And you chose not to do that.

THE DEFENDANT: I didn't want that. I denied it. But defense did not ask for a continuance, not while the defendant was present, because I spoke to your honorable judge. I said, your Honor, I want to exercise my 120. That's when you said, okay, how many more days do we have left? You said 32 if I'm not mistaken. That's when we set the date at September 16, and we was ready to

13

go. You was gonna say—the clerk, the man right here, I think she said September 4 and the 16. But Mark Rose stated lets just go straight to trial on the 16th.

THE COURT: *** [E]ven if it was set on September 16th, I find that the time between September 16th and today is assessed against you."

Although the trial court did not make an oral pronouncement or enter a written order that day, the court continued the matter over defendant's objection.

¶ 13 On September 26, the parties appeared in court again and the trial court asked defendant if he still desired to proceed *pro se*. Defendant responded in the affirmative. The trial court then stated that it would be setting defendant's trial date. The State asked for a new trial date in October and the following discussion occurred:

"THE DEFENDANT: I—I—I object, man, I supposed to go to trial this week, man, my 120 over with, Your Honor.

THE COURT: Complete whatever it is you want to say.

THE DEFENDANT: I'm just saying, I mean, I was supposed to go to trial this week, my 120 is over with, I have been over 120, I have been waiting all week to go to trial, and I'm trying to figure out why am I not going to trial. I supposed to go—you steady stagnating, this is like a prejudicial delay on the part of the courts to stagnate my 120, and I don't understand why.

I mean, you said how I want to get this over with, I want to get it over with because I am not guilty. I'm fighting for my rights because I am not guilty. I'm ready to go to trial. It seem like you delaying this trial for the State, you know, I'm ready to go to trial. I have been saying this from day one, I mean, I am not guilty, and so now you saying that we got to go all the way to October 25th, and I

14

have been in jail since 5/24, May, and it's just a—it's just a—it's not a complicated case, and I never had a continuance. My 120 is over with.

* * *

THE DEFENDANT: And all I'm saying is I got a life to get to, man, I mean, I have been in jail incarcerated 126 days, and I should be—I should be entitled to my 120. ***

* * *

THE DEFENDANT: You're Honor, I object to this continuance[.]"

¶ 14 Ultimately, the trial court set October 7 as defendant's trial date over defendant's objection. The written order allowed defendant to proceed *pro se* and allowed defense counsel to withdraw. The written order also references the previous hearing (September 23) and states that the matter had been continued on the court's motion and over defendant's objection because an older case went to trial that day.

¶ 15 In the interim, defendant filed a letter alleging judicial bias, a second letter alleging judicial misconduct, a motion to substitute judge, a motion to dismiss the charges alleging a speedy trial violation, and a *habeas corpus* motion alleging a speedy trial violation.

¶ 16 On October 7, the trial court informed the parties that the trial could not begin that day because the matter had to be reassigned to the chief judge again because defendant had filed another motion to substitute judge. Defendant again raised the issue of the speedy trial violation in court, but the court noted the issue had already been resolved. The trial court noted that it would not consider any of defendant's other motions until the chief judge resolved defendant's motion to substitute judges. Defendant told the trial court, "[o]n that delay, I object on the delay." Then, defendant explained, "I mean, I got the right to file a motion to substitute judge

15

and still my 120 days still should roll.  I mean, because I have that right.  Plus, you had other judges available to take me to trial within my 120 days."  The trial court responded by telling defendant that since he had filed the motion, the time operated against defendant.  The proceedings then ended.  On October 16, the trial court reassigned defendant's case to a new judge.

¶ 17    When the parties returned to court on October 18, the new trial judge asked defendant again if he still wished to proceed *pro se*.  Defendant responded in the affirmative and the trial court admonished defendant about his right to counsel.  Defendant again argued a speedy trial violation.  The following discussion then occurred:

"THE DEFENDANT: My question was, was—I was exercising my 120, even when they gave me Tom Sheets.  It's just that I just had a dispute about my 120, faster speedy trial rights.  Is it possible that we can look into that matter because I filed motions?

[THE STATE]: Judge, that matter has been looked into five times and ruled on every time.  It's part already of the case of his file that's been ruled on.  He doesn't get rehearing just because he asked for a second—

THE DEFENDANT: I never had a hearing, sir.

THE COURT: [Defendant], I'm going to ask you not interrupt anybody, myself.  I'll ask he not interrupt you either.

THE DEFENDANT: Okay.

THE COURT: What we need to do, at least in any mind, I'll defer to counsel for the State on this as well, but since the matter's been reassigned to this Court, I think this courtroom and this judge, we need to set the matter on the

16

Court's trial calendar to get—make sure it's moving along, so [defendant] can have his trial as he's previously requested.

* * *

THE DEFENDANT: Your Honor, I been in—like I said, I was exercising my 120 because I have lost a lot, you know, I had a lot going on in my life at the time and my bond was reasonably high for a situation where it was the value of the product that I alleged I supposed to have. My bond was set at $50,000, Your Honor, and when the State asked for that bond they was claiming that I was Class X eligible which is really a retail theft to an open store that's open and—

THE COURT: [Defendant], I'm not going to entertain an oral motion for a reduction of bond, okay. If you want to file—I believe you maybe already filed one in the past or through counsel and that's—but we are not going to continue to do this.

THE DEFENDANT: Can I say one more thing? I don't mean to cut you off. It was filed on August 14th, but I never had a bond reduction hearing.

THE COURT: Well, I'll review the file. You can always renew that motion if you need to, okay, but at this point in time, you want to keep bringing up preliminary matters. I want you to keep saying you want the speedy trial. I'm trying to get your speedy trial scheduled on my docket as quickly as possible, okay. You are the one that had the judge that was presiding over it removed, and as a result is going to be a slight delay. I'm going to get you onto the trial calendar as quickly as possible. ***

* * *

17

THE DEFENDANT: Okay. Can I find—where am I located at as far as my 120? I couldn't find out about that in the last courtroom.

THE COURT: That I don't know. I have not done those calculations."

The trial court did not rule on defendant's argument, but set the matter for a scheduling conference, a hearing to review all outstanding pretrial motions, and set the matter for trial on December 3.

¶ 18    In the interim, defendant filed a *pro se* motion for reduction of bail, motion to dismiss the burglary charge, a second motion to dismiss alleging a speedy trial violation, and a motion to be released immediately due to a speedy trial violation. The trial court granted defendant's bond reduction motion. After hearing the arguments regarding defendant's motion to dismiss for a speedy trial violation, the trial court reviewed the history of the case and discussed what periods of time were attributable to which party.

¶ 19    The court began by noting that 87 days from the day after defendant's arrest on May 25 to the original trial date on August 19 were attributable to the State. The trial court attributed the time from August 19 to September 16 (28 days), to defendant because of defendant's motion to reduce his bond, the written order from August 19 which indicated that the matter was continued on defendant's motion, and the transcripts from the hearing of August 19. The trial court also attributed the time from September 16 to September 26 (10 days) to defendant due to defendant's *pro se* filings which needed to be resolved prior to trial. The trial court attributed the time from September 26 to October 7 (11 days) to the State because the trial needed to be continued due to another trial taking priority. The trial court attributed the remaining time to defendant because of the *pro se* motions filed by defendant. Ultimately, the trial court denied defendant's motion to dismiss because it found less than 120 days attributable to the State.

18

¶ 20    On December 3, the matter proceeded to a jury trial. Following the trial, defendant was convicted of both burglary and retail theft. Subsequently, defendant filed a motion arguing, in relevant part, that his speedy trial rights were violated. Shortly thereafter, and before a hearing on the motion, defendant filed a *pro se* motion to reconsider the denial of his motion to dismiss based on the speedy trial violation. The trial court denied defendant's motion. The trial court then sentenced defendant to 5½ years' imprisonment.

¶ 21                                    ANALYSIS

¶ 22    On appeal, defendant argues that his section 103-5(a) speedy trial right was violated because his trial occurred beyond the 120-day requirement. "On review, a trial court's determination as to whether a delay is attributable to the defendant is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion." *People v. Hall*, 194 Ill. 2d 305, 327 (2000). Upon review, we find the trial court did not abuse its discretion when it determined that less than 120 days were attributable to the State.

¶ 23    Section 103-5(a) of the Speedy Trial Act provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2012). The statutory period begins to toll automatically from the day after defendant is taken into custody. *People v. Mayo,* 198 Ill. 2d 530, 536 (2002). However, when a delay is occasioned by defendant, the time of the 120-day period will be temporarily suspended. 725 ILCS 5/103-5(f) (West 2012).

¶ 24    In this case, the speedy trial clock began May 25, the day after defendant was taken into custody. See *People v. Shaw*, 24 Ill. 2d 219 (1962) (The speedy trial term is computed by excluding the first day and including the last, unless the last day is a Sunday or a holiday, in

19

which case it is also excluded). Both parties agree that the trial court properly attributed the 87 days between May 25 and the initial trial date of August 19. The remaining time is broken down into the following periods: (1) 28 days from August 20 to September 16; (2) 7 days from September 17 to September 23; (3) 3 days from September 24 to September 26; (4) 11 days from September 27 to October 7; and (5) 57 days from October 8 to December 3. We discuss each period in turn.

¶ 25                                    I. August 20 to September 16 (28 Days)

¶ 26         First, defendant argues that the trial court abused its discretion when it attributed the 28 days from the initial trial date to the rescheduled trial date to defendant. Upon review, we find that defendant is bound to defense counsel's agreement to continue the matter on defendant's motion for bond reduction. Therefore, we hold that the trial court did not abuse its discretion when it attributed this period to defendant.

¶ 27         "For purposes of a speedy-trial question, a delay is charged to [a defendant] where his act in fact causes or contributes to the delay." *People v. Bowman*, 138 Ill. 2d 131, 139-40 (1990). Further, our supreme court has held that where a defense attorney requests or agrees to a continuance on behalf of a defendant, the resulting delay is attributable to the defendant. *Id.* And, where a defendant fails to "promptly repudiate an attorney's unauthorized act upon receiving knowledge of the same, the defendant effectively ratifies the act." *Hall*, 194 Ill. 2d at 328-29 (citing *Bowman*, 138 Ill. 2d at 143).

¶ 28         On August 19, after the trial court explained that defendant's trial needed to be rescheduled, the following discussion occurred:

20

"MR. ROSE: It is in part, Judge. There's also a Motion for Bond Reduction that was filed in the matter that perhaps we could do some time either today or this afternoon, whenever is convenient.

[Defendant] is obviously interested in pursuing the matter with some rapidity.

\* \* \*

THE COURT: \*\*\* Let's do this, can we continue it over on the *defendant's* motion, if you will indicate that—is there some discovery that needs to be completed or is there—

MR. ROSE: I've received the video but I haven't had the opportunity to review it yet.

THE COURT: Let's continue it over and then bring you back next week so we can do your—or later this week, no, bring you back next week to do your Motion for Bond Reduction, okay?

THE DEFENDANT: That's fine.

THE COURT: That way, if you have some people that want to be here, you can have them come on the day that they need to, as opposed to just do it right now.

THE DEFENDANT: That's fine.

\* \* \*

THE COURT: Okay, All right, why don't we go ahead and put it on something next week?

[THE STATE]: Yes, sir.

21

THE COURT: Want to do it on a Wednesday or Thursday?

[THE STATE]: That's fine, either one, Judge.

THE COURT: Let's bring him over on Wednesday at 3:00.

MR. ROSE: That's fine.

THE COURT: So scheduling conferences are Wednesdays at 3, so we'll just put your Motion for Bond Reduction next Wednesday at 3:00.

THE DEFENDANT: That's fine."  (Emphasis added.)

¶ 29    Our review of this discussion reveals that the trial court explicitly asked defense counsel to continue the matter on *defendant's* motion and defense counsel responded in the affirmative. "An agreed continuance tolls the speedy trial period *** ."  *People v. Wade*, 2013 IL App (1st) 112547, ¶ 26; *People v. Turner*, 128 Ill. 2d 540, 553 (1989) ("[A]n express agreement to a continuance on the record is an affirmative act attributable to the defendant.").  Defendant failed to promptly repudiate defense counsel's actions.  Indeed, defendant responded that it was "fine" when the trial court told defendant that the motion for bond reduction would be heard the following week.  The written order from this hearing accurately reflects the discussion between the parties in that it states: "[t]he Defendant move(s) for a continuance."

¶ 30    Defendant challenges the trial court's reliance on the written order by arguing that the order is contradicted by the transcript of the proceedings.  Defendant calls our attention to the fact that the trial court was unavailable to proceed to trial on August 19 and defendant's statement that he wished to "use [his] 120."  However, neither of the above points overcome the fact that both he and his counsel responded "fine" when the trial court suggested the parties return to court at a later date for a hearing on defendant's motion for bond reduction.

22

¶ 31    We acknowledge that the trial court made it clear that defendant's trial needed to be rescheduled because another trial in an unrelated case took priority. And, generally, "delays caused by crowded dockets rest with the State." *People v. Plair*, 292 Ill. App. 3d 396, 400 (1997). Nevertheless, where there are two reasons for the delay, one attributable to the State and the other to the defendant, "the fact that the delay was partially attributable to the defendant will be sufficient to toll the statutory term." *Id*. at 398. Here, in addition to agreeing to continue the matter, delay was partially attributed to defendant because he had a pending motion for bond reduction on August 19. Any type of motion filed by defendant which eliminates the possibility that the case could immediately be set for a trial also constitutes an affirmative act of delay attributable to defendant. See *People v. McDonald*, 168 Ill. 2d 420, 440 (1995) (abrogated on other grounds). Defendant could have withdrawn the motion and demanded a trial on August 19, but chose not to. Instead, he responded in the affirmative when the trial court explained that it would consider his motion the following week. As defendant's motion needed to be resolved, it eliminated the possibility that the case could immediately proceed to trial.

¶ 32    Further, we cannot construe defendant's subsequent statement that he wanted to "use [his] 120" as an objection to the continuance. Section 103-5(a) places the responsibility on a defendant to take affirmative action when he becomes aware that his trial is being delayed by objecting to the delay via a written demand for trial or an oral demand for trial on the record in order to prevent the speedy trial clock from tolling. *People v. Cordell*, 223 Ill. 2d 380, 391 (2006). "[W]hile no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a *speedy* trial in the record *** ." (Emphasis added.) *People v. Peco*, 345 Ill. App. 3d 724, 734 (2004). We find significant that defendant did not demand an *immediate* trial on August 19. In addition, while defendant's statement was in

23

response to the trial court's suggestion to set his trial at a time outside the 120-day period (in October or November), his statement came after he and his attorney agreed to have a hearing on defendant's motion for bond reduction at a later date.

¶ 33    In reaching this conclusion, we reject defendant's argument that an agreement to a trial date within the 120-day period for the Speedy Trial Act is not a "delay" that can be attributed to defendant.  In support of his position, defendant cites *Cordell* and the subsequent application of *Cordell* in *People v. LaFaire*, 374 Ill. App. 3d 461 (2007), and *People v. Zeleny*, 396 Ill. App. 3d 917 (2009).  We find defendant's interpretation of *Cordell* is too narrow.

¶ 34    In *Cordell*, our supreme court was asked to determine the proper construction of the term "delay" for purposes of section 103-5(a).  *Cordell*, 223 Ill. 2d at 389.  The court concluded that a "delay" is "[a]ny action by either party or the trial court that moves the trial date outside of [the] 120-day window."  *Id*. at 390.  Therefore, when a court sets a date for trial that falls outside the 120-day limit, it is "delaying" trial and defendant was obligated to object in order to prevent the speedy trial clock from tolling.  *Id*. at 391.  Defendant's argument, in other words, is that when a defendant agrees to reschedule a trial to a date within the 120-day speedy trial period, the delay cannot be attributable to defendant for purposes of calculating the speedy trial clock.

¶ 35    Significantly, however, we find that *Cordell* did not limit the requirement that a defendant object to an action that postpones the proceedings to only those instances where the trial date is set beyond the 120-day term.  See *Wade*, 2013 IL App (1st) 112547, ¶¶ 23-24 (rejecting defendant's argument that an agreement to a trial date inside the 120-day period is not a "delay" attributable to defendant).  While *Cordell* held that section 103-5(a) requires a defendant to object when his trial is being "delayed" (outside 120 days), it does not change the already existing law that an *agreed* continuance tolls the speedy trial period.  See *People v.*

24

*Woodrum*, 223 Ill. 2d 286, 299 (2006) ("An agreed continuance generally constitutes an act of delay attributable to the defendant." (citing *People v. Kliner*, 185 Ill. 2d 81, 114-15 (1998))).

¶ 36 To accept defendant's narrow interpretation of *Cordell* would permit defendant to postpone the proceedings by filing motions and agreeing to continuances within the 120-day window, then move to dismiss the charges once the 120-day period expires. Such a holding would be contrary to the purpose of section 103-5(a). "Defendant's contention illustrates what the *Cordell* court sought to prevent, the use of section 103-5(a), not as a shield to protect defendant's right to a speedy trial, but as a sword to defeat his conviction." *Wade*, 2013 IL App (1st) 112547, ¶ 26.

¶ 37 As to defendant's reliance on *LaFaire and Zeleny*, we find both are factually distinguishable in that the statute at issue in both cases was section 103-5(b), which provides for a 160-day time period in which persons on bail or recognizance must be tried (725 ILCS 5/103-5(b) (West 2012)). By contrast, this defendant was in custody from the time of his arrest to the commencement of his trial and fell into the category of persons subject to section 103-5(a).

¶ 38                                    II. September 17 to September 23 (7 days)

¶ 39 Next, defendant argues that the trial court abused its discretion when it attributed the seven day period in which the trial court considered and resolved defendant's letter requesting a substitution of judge. According to defendant, because he was represented by counsel at the time, he had no right to file a *pro se* motion and the trial court should not have transferred the matter without asking defendant's attorney whether he was adopting defendant's *pro se* motion. We disagree.

¶ 40 Again, any type of motion filed by defendant which eliminates the possibility that the case could immediately be set for a trial also constitutes an affirmative act of delay attributable to

25

defendant. See *McDonald*, 168 Ill. 2d at 440. Even though defendant objected to continuing the trial, the record is clear that the matter had to be continued due to defendant's *pro se* letter that the trial court construed as a request for a substitution of judge. As defendant's motion needed to be resolved by a different judge, it prohibited the cause from proceeding to trial—regardless of whether defendant had the right to file the motion in the first place. Consequently, we find that the trial court did not abuse its discretion when it attributed this delay to defendant.

¶ 41                                    III. September 24 to September 26 (3 days)

¶ 42        Next, defendant argues that the three-day period following the September 23 hearing in which the trial court continued the matter without written order or explanation on the record should not be attributable to defendant.[3] We agree. The written order entered on September 26 indicates that the cause had been continued on the court's motion because an older case went to trial. See *Kliner*, 185 Ill. 2d at 119-20 (delay occasioned by trial judge's unavailability cannot be attributed to defendant). Because defendant expressly objected on the record and stated that he was prepared to immediately go to trial on September 23, this delay cannot be attributed to defendant. Therefore, we find that the speedy trial should not have been tolled for this period. 725 ILCS 5/103-5(a) (West 2012). Thus, when the parties returned to court on September 26, the speedy trial clock was at 90 days (87 plus 3).

¶ 43                                    IV. September 27 to October 7 (11 days)

¶ 44        Next, defendant asserts that the trial court properly attributed the 11-day postponement of defendant's trial to the State. The State agrees with the trial court's finding and concedes that this time is attributable to the State. Upon review, we agree and accept the State's concession.

_____

[3]Although the trial court considered the time from September 17 to September 26 as a single period, we have considered the two periods separately.

26

¶ 45          The record establishes that on September 26, the State explicitly requested to set the matter for trial in October. Defendant unequivocally objected to the State's request, asserted his speedy trial right, argued that the speedy trial period had already expired, and stated that he was prepared to proceed to trial immediately. Thus, the speedy trial clock was at 101 days (87 plus 3 plus 11) on October 7.

¶ 46                              V. October 8 to December 3 (57 days)

¶ 47          Finally, defendant concedes that the remaining time following October 7 is properly attributed to him because of his second motion to substitute judge. We agree. As noted above, where a defendant files a motion which eliminates the possibility that the case could immediately be set for trial, the time is attributable to defendant. See *McDonald*, 168 Ill. 2d at 440.

¶ 48          Accordingly, the speedy trial clock tolled at 101 days and defendant's trial, which commenced December 3, was within the 120-day speedy trial period. Consequently, the trial court did not abuse its discretion when it denied defendant's motion to dismiss the charges on the basis that his speedy trial right had been violated.

¶ 49                              CONCLUSION

¶ 50          The judgment of the circuit court of Peoria County is affirmed.

¶ 51          Affirmed.

¶ 52          PRESIDING JUSTICE OBRIEN, dissenting.

¶ 53          The majority affirms defendant's convictions and sentences. I dissent on the grounds that the State failed to bring defendant to trial within the speedy trial period.

¶ 54          The majority has broken down the speedy trial period into five individual sections. For purposes of clarity, I will follow this structure and address each section.

¶ 55 Like the majority, I begin by acknowledging the parties' concession that the speedy trial clock began on May 25 and the trial court properly attributed the 87 days (May 25 to August 19) to the State. *Supra* ¶ 24. I now turn to the majority's finding that the trial court did not abuse its discretion in attributing the first disputed period (28 days from August 20 to September 16) to defendant. For the reasons that follow, I believe the majority's finding as to this time frame is misguided.

¶ 56 At the August 19 hearing, the trial court immediately informed the parties that defendant's trial needed to be rescheduled due to the *court's unavailability*. When the trial court suggested new trial dates beyond the 120-day period (October or November) it was delaying defendant's trial for purposes of section 103-5(a) and defendant was obligated to object. See *Cordell*, 223 Ill. 2d at 390. Defendant satisfied this requirement when he expressed his desire to rely on "[his] 120" days and demanded a trial within the speedy trial period. The trial court ultimately reset defendant's trial within the 120-day period not because defendant agreed to a continuance but, instead, because defendant asserted his speedy trial right. *Id.* (noting that section 103-5(a) is meant to be used "as a shield against any attempt to place [defendant's] trial date outside the 120-day period," and not "as a sword after the fact, to defeat a conviction"). Therefore, this delay should not be attributed to defendant.

¶ 57 By contrast, the majority finds that defendant is bound by his counsel's agreement to continue the matter on the defense's motion. *Supra* ¶ 26. In doing so, the majority relies on defendant's pending motion for bond reduction and the fact that defendant and his counsel responded "fine" when the trial court suggested continuing the matter on defendant's motion. *Supra* ¶ 29. While I agree that a defendant is generally bound by the actions of his counsel, I

28

would find that the record, when considered in its entirety, establishes that the trial delay was neither caused by the defense's bond reduction motion nor agreed to by defendant or his counsel.

¶ 58    Usually, when a defendant files a motion, the time necessary for the State to process and respond to it, as well as the time until the trial court hears and decides the motion is attributable to defendant. See *McDonald*, 168 Ill. 2d at 440. However, "[s]peedy trial rights do not toll simply because a defendant files a motion." *People v. Ladd*, 294 Ill. App. 3d 928, 932 (1998). Instead, a court must examine the circumstances in order to determine if defendant's motion actually caused delay that should be attributed to defendant. *Id.* at 931-32.

¶ 59    Here, defendant's only pending motion was a routine bond reduction motion. Neither the defense nor the State requested additional time to prepare for argument on the motion. Although defense counsel stated that the motion could be heard at a later time convenient to the court, this discussion occurred after the trial court informed the parties that the trial needed to be rescheduled due to the court's unavailability. See *Kliner*, 185 Ill. 2d at 119-20. In other words, defendant's pending motion did not contribute to the trial court's inability to proceed to trial. This conclusion is further made clear by the fact that the court never even ruled on this specific motion.

¶ 60    In coming to this conclusion, I reject the majority's reliance upon counsel's statement that it was "fine" to have the motion heard the following week. While the majority believes that this word amounts to an agreement to continue the *trial* on the defense's motion, I believe the word, when read in conjunction with the entire record, merely evidences that defendant and counsel acquiesced to the trial court's offer to hear the motion at a later time due to the fact that defendant's trial could not begin immediately. Accordingly, I would hold that the speedy trial

clock did not stop on August 19. Adding this period to the 87 days already assessed to the State moves the speedy trial clock to 115 days.

¶ 61     Next, the majority finds that the trial court did not abuse its discretion in attributing the seven-day period from September 17 to September 23 to defendant because his *pro se* motion to substitute judge prevented the matter from proceeding to trial. *Supra* ¶ 40. The majority finds this period attributable to defendant regardless of whether he had the right to file the *pro se* motion. *Id.* While I join the majority's conclusion, I do so for different reasons. I would find, as defendant argues, that defendant did not have the right to file the *pro se* motion while represented by counsel. Regardless of this fact, however, the trial court still needed to address defendant's *pro se* filing by either striking it or asking defense counsel to adopt the motion. Ultimately, the trial court denied the motion. Because defendant's *pro se* filing was an act of delay which eliminated the possibility that the case could immediately be set for trial, my analysis requires the same outcome as the majority for this period. See *McDonald*, 168 Ill. 2d at 440. Thus, the speedy trial clock remained at 115 days on September 17.

¶ 62     The majority goes on to find that the trial court abused its discretion in attributing the three-day period following the September 23 hearing to defendant. *Supra* ¶ 42. The majority then proceeds to find that the trial court correctly attributed the 11-day postponement of defendant's trial on September 26 to the State. *Supra* ¶¶ 44-45. I agree and join in the majority's findings for both periods.

¶ 63     Adding the above 3- and 11-day periods to the 115 days already assessed to the State moves the speedy trial clock beyond the 120-day requirement. As a result, I would find the State failed to bring defendant to trial before the speedy trial period expired in violation of section 103-5(a). The remedy for a violation of section 103-5(a) is discharge. 725 ILCS 5/103-5(d)

30

(West 2012). Accordingly, I would reverse defendant's convictions and sentence and order his discharge pursuant to the Speedy Trial Act.