NOTICE
Decision filed 11/15/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 190456

NO. 5-19-0456

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
        Plaintiff-Appellee,             )    St. Clair County.
                                        )
v.                                      )    No. 14-CF-914
                                        )
ANTRELL TEEN,                           )    Honorable
                                        )    Zina R. Cruse,
        Defendant-Appellant.            )    Judge, presiding.
_____

        JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
        Justices Welch and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Antrell Teen, files a direct appeal from the trial court's judgment of conviction. On appeal, he argues that his speedy trial rights were violated, trial counsel was ineffective for failing to pursue his speedy trial rights, and the court committed reversible error when it prevented *Krankel* counsel from performing his duties by barring him from presenting additional claims and evidence at the *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)). For the following reasons, we disagree.

¶ 2                                I. BACKGROUND

¶ 3        On June 29, 2014, defendant was charged by complaint with one count of aggravated battery for knowingly discharging a firearm, injuring Shanter Bonner, in violation of section 12-3.05(e)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(e)(1) (West 2014)) and one

1

count of first degree murder of Cassandra Holman in violation of section 9-1(a)(1) of the Code (*id.* § 9-1(a)(1)). On September 5, 2014, a superseding indictment was issued for the same charges.

¶ 4    Defendant was apprehended in Missouri on December 11, 2015. He was processed into the St. Clair County jail on December 15, 2015, and his arraignment was held on December 23, 2015. At that time, Gregory Nester, from the public defender's officer, was appointed as counsel.

¶ 5    On December 28, 2015, Mark Peebles, from the public defender's officer, was assigned to defendant's case. Defense counsel filed a motion to reduce bond and a motion for discovery. A status conference was held on February 8, 2016. Defense counsel appeared at the hearing; defendant did not. At that time, the court ordered the proceedings to be continued. The written order stated the continuance was "by agreement."

¶ 6    At two subsequent status hearings—held on March 1, 2016, and March 30, 2016—the court again ordered the proceedings continued "by agreement/without objection." Defense counsel appeared at both hearings; defendant did not attend either hearing.

¶ 7    On April 20, 2016, defendant filed correspondence stating he "originally asked to exercise [his] right to a speedy trial December 16, 2015." He asserted that it had been over 120 days since his incarceration, and he was still in the county jail with no explanation. Defendant had not heard from his attorney, despite calling him several times and leaving a message. He also called his attorney's direct supervisor. Defendant stated, "This letter is to inform the courts and all parties involved that I have not agreed to a delay of any kind and object." The correspondence indicated this was the second letter written on that issue and stated it included a copy of the initial correspondence; however, the initial correspondence was not included. Defendant also filed a *pro se* motion to dismiss based on the noncompliance with his statutory speedy trial request (725 ILCS 5/103-5(a), (d) (West 2016)).

¶ 8      A status hearing was held on April 28, 2016. Defense counsel and defendant appeared. The court acknowledged the demand for speedy trial and motion to dismiss. The court stated defendant was taken into custody around December 11, 2015, and the speedy trial period totaled 60 days on February 8, 2016. Its calculations revealed they were "at 60 days today," and the case needed to be set and completed "within 60 days." The State and defense counsel stated this was also their understanding. The court inquired, "And your understanding, Mr. Teen?" Defendant responded, "I do understand now." The court clarified the issue stating, "Mr. Teen indicates 'now,' because off the record we discussed how those numbers are tolled, or not."

¶ 9      Thereafter, the court and counsel discussed possible trial dates. The State and defendant indicated their acceptance of a May 23, 2016, trial date, but defense counsel stated he did not believe he would be ready. The trial court informed defense counsel, "You have no choice. This is his demand. He has that right. You're going to have to get ready."

¶ 10     On May 2, 2016, the trial court issued a written order canceling the May 23, 2016, setting. The order noted that the State argued it was ready for trial on May 9, 2016, but defense counsel needed additional time and requested the May 23, 2016, trial date. The State requested a continuance from May 23, 2016, due to witness unavailability and requested the trial be set for June 6, 2016, but defense counsel was unavailable at that time and requested a trial date of June 20, 2016. The court ordered the delay from April 28, 2016, to May 9, 2016, attributable to the State; the delay from May 9, 2016, to May 23, 2016, attributable to the defense; the delay from May 23, 2016, to June 6, 2016, attributable to the State; and the delay from June 6, 2016, to June 20, 2016, attributable to the defense.

¶ 11     Following completion of a four-day trial, the jury found defendant guilty of both aggravated battery and first degree murder. The jury also found, regarding the commission of first

degree murder, defendant was armed with a firearm and personally discharged a firearm that proximately caused the death of another.

¶ 12     On July 21, 2016, defense counsel filed a posttrial motion, raising various errors. Five days later, defendant moved, *pro se*, for a new trial. The pleading alleged defendant was deprived of a fair trial by an impartial jury. Defendant's affidavit stated he was taken into custody on December 11, 2015, arraigned December 16, 2015, and was only brought back to court on April 28, 2016, after writing several letters to the court, his court appointed counsel, and his counsel's supervisors at the public defender's office. The affidavit stated that the letters objected to any delay and addressed a violation of speedy trial, a motion to dismiss, undue delay, unprofessional conduct by defense counsel, and counsel's blatant attempt to circumvent the running of the 120-day speedy trial clock. Defendant's affidavit further stated his defense counsel was ineffective for failing to seek a discharge on speedy trial grounds and the trial court erred by not acknowledging his motion and denying the dismissal on speedy trial grounds. Also attached to the pleading was defendant's motion to dismiss based on a speedy trial violation.

¶ 13     On September 19, 2016, the trial court noted that the parties were set for a sentencing hearing on August 23, 2016; however, defendant filed *pro se* motions that included a claim of ineffective assistance of counsel. The trial court inquired if defendant's only claim of ineffective assistance of counsel was based on the failure to pursue the motion to dismiss on speedy trial grounds. Defendant stated he also had other claims, which included counsel withholding information from him. He stated he did not see discovery until the day before the trial and the discovery he saw included only 4 of the 60 DVDs.

¶ 14     Defendant further stated that he wrote a letter to the court on March 31, 2016, that discussed issues regarding a failure to communicate with defense counsel. Defendant confirmed a copy was

also sent to defense counsel and the public defender's office. The court admonished defendant, stating that letters do not go in the court file and the court ignores them to avoid an *ex parte* communication issue. Defendant averred that the letter addressed the inability to speak with his attorney, and the attorney's failure to bring him to the status conferences after defendant told counsel he wanted to go. Defendant stated that his trial should have been held in April and they had not prepared for trial. He had not seen any discovery or the grand jury transcript, and counsel only came to see him once in jail. The court inquired as to whether defendant had the information, and defendant clarified that he kept detailed records about almost everything.

¶ 15    The trial court explained to defendant that it was continuing the matter to hold a hearing on September 29, 2016, pursuant to *Krankel*, 102 Ill. 2d 181. The court explained the preliminary-*Krankel* inquiry and explained it would then determine whether defendant presented a *prima facie* case of ineffectiveness. On September 29, 2016, the trial court issued an order continuing the *Krankel* hearing until October 18, 2016.

¶ 16    At the October 18, 2016, hearing, defendant made several claims of ineffective assistance of trial counsel based—*inter alia*—on the failure to call witnesses, inadequate closing arguments, lack of communication, insufficient cross-examination of eyewitness Keveon Frison, withholding discovery, and misleading defendant. The court was also again advised of defendant's March 31, 2016, correspondence, as it related to his ineffective assistance of trial claim. Defendant claimed the correspondence was sent to the circuit clerk. The court found no copy of the correspondence in the file. The court stated that defendant's July pleadings indicated defendant's belief that defense counsel should have sought a discharge on speedy trial grounds. When queried, neither the State nor defense counsel had anything to add at that time. The court stated it would take the matter under advisement and write up an order giving it another setting so they could "see where we are."

¶ 17    On October 28, 2016, defendant filed a list of his ineffective assistance of counsel claims, which was consistent with his testimony at the October 18, 2016, hearing. Attached to the document was defendant's June 17, 2016, jail complaint regarding his inability to view the discovery DVDs because the officer in charge of viewing did not work weekends and a copy of the March 31, 2016, correspondence to the court regarding defendant's request for a speedy trial and counsel's failure to keep defendant "in the loop." The correspondence indicated that defendant advised Judge Clay of his request for a speedy trial during the December 16, 2015, hearing, as well as at his video arraignment on December 23, 2015. The letter stated defense counsel assured defendant that his request would be honored from the date he was taken into custody. He was later assigned to Mr. Peebles, who advised defendant that he verbally confirmed defendant's desire for a speedy trial with the prosecutor.

¶ 18    On January 24, 2017, the trial court issued a handwritten order finding there may be a basis for the claim of ineffective assistance of counsel, pursuant to *Krankel*. The order stated that the case would be set for status on February 21, 2017, and would proceed to an evidentiary hearing on March 20, 2017, and that counsel would be appointed from the public defendant's office to represent defendant on the claim.

¶ 19    The matter proceeded to hearing on March 20, 2017. At that time, the court advised defendant that the court failed to make the proper findings following the *Krankel* hearing, and therefore it would be entering an order clarifying which claims it found had a basis. The court also appointed Rick Roustio of the public defender's officer to represent defendant.

¶ 20    On June 1, 2017, the trial court issued an order stating there was a sufficient basis only for defendant's claims that counsel failed to review the DVDs and 1500 pages of discovery and "not using interview of Frison for impeachment or exculpatory purposes." It found there was no basis

for the other claims presented in the July 26, 2016, pleading, and at the September 19 and October 18, 2016, hearings.

¶ 21 On July 20, 2017, the trial court issued an order stating that counsel needed to be assigned to represent defendant and reset the case for a *Krankel* evidentiary hearing. On September 5, 2017, the trial court issued an order appointing Preston K. Johnson IV as attorney for defendant and set the case for status on October 9, 2017.

¶ 22 The *Krankel* evidentiary hearing was held on April 2, 2018. The State called defendant's trial counsel, Mark Peebles. During his testimony, Mr. Peebles agreed that on April 28, 2016, defendant demanded a speedy trial, and the trial was set for June 20, 2016. He testified that he received a "huge file" containing approximately 1285 items from the State in discovery, of which approximately 150 items were on CD or DVD. Mr. Peebles stated that he typically reviewed all the items tendered in discovery before trial, but defendant's demand for speedy trial made it "imperative" that counsel "drop pretty much everything else" to spend as much time as possible going through the sizable file.

¶ 23 On cross-examination, *Krankel* counsel asked whether there was a theory of felony murder, and Mr. Peebles answered affirmatively. *Krankel* counsel then asked if a felony murder verdict form was used in this case. The State objected to the questioning as being outside the scope of what the court previously found to be the issues for litigation at that hearing. The court confirmed the hearing was limited to the points in the court's June 1, 2017, order regarding the lack of reviewed discovery and the lack of cross-examination as to Frison and asked if *Krankel* counsel's questioning fit into one of those issues. *Krankel* counsel argued the verdict forms connected to Frison "in a broad sense." The court then allowed *Krankel* counsel to continue to the extent that it was relevant to the two claims at issue. Thereafter, *Krankel* counsel inquired as to Mr. Peebles's

7

subsequent review of the case file and discussion of the matter with the State. Following the remainder of Mr. Peebles's testimony and closing arguments, the court took the matter under advisement.

¶ 24 On April 11, 2018, defendant, *pro se*, filed a memorandum, addressing the *Krankel* procedures. He complained that he alleged 20 claims of ineffective assistance of counsel, but the court reduced his claims to two and barred *Krankel* counsel from the opportunity to evaluate or present the previously raised claims.

¶ 25 On May 22, 2018, the trial court issued an order on the *Krankel* hearing, denying defendant's claims. It reasoned that defendant could not show prejudice. Subsequently, after defendant was appointed new counsel, the court denied the motion for a new trial. The parties proceeded to sentencing, where the court sentenced defendant to 6 years' incarceration on the aggravated battery count to run consecutively to a 50-year term of incarceration on the first degree murder count. After the court denied defendant's motion to reconsider the sentence, defendant timely appealed.

¶ 26                                II. ANALYSIS

¶ 27 On appeal, defendant argues that his statutory right to a speedy trial was violated, and trial counsel was ineffective for affirmatively misleading defendant about his speedy trial rights and failing to file a motion to discharge based on a speedy trial right violation. Defendant also contends that the court committed reversible error in barring *Krankel* counsel's ability to raise ineffectiveness claims at the evidentiary hearing.

¶ 28                          A. Speedy Trial Rights

¶ 29 While defendant argues his statutory speedy trial rights were violated, he concedes that his claim succeeds only if "he has some basis for contesting the time attributed to the defense between

8

February 8 and April 28, 2016."[1] Both the United States Constitution and the Illinois Constitution guarantee an accused the right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To effectuate that right, section 103-5 of the Code of Criminal Procedure of 1963 requires "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2016). "The statutory period begins to toll automatically from the day after defendant is taken into custody." *People v. Lilly*, 2016 IL App (3d) 140286, ¶ 23. However, if a delay is occasioned by the defendant, the statutory period is tolled. *Id.* Defendant is entitled to have the charges dismissed if he can affirmatively establish a violation of the speedy trial statute. *People v. Bowman*, 138 Ill. 2d 131, 137 (1990). "The trial court's determination as to who is responsible for the delay of trial is entitled to much deference, and should be sustained in the absence of a clear showing of the trial court's abuse of discretion." *Id.*

¶ 30     Generally, a defendant is bound by the actions of his attorney. *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003). Accordingly, when defense counsel requests a continuance, such delay is attributable to defendant. *Bowman*, 138 Ill. 2d at 141. Moreover, the record need not affirmatively show that counsel consulted with and received the consent of defendant regarding counsel's request or agreement to a continuance. *Id.* at 142. A defendant's failure to promptly repudiate an attorney's unauthorized act, upon receiving knowledge of such act, effectively ratifies the act. *Id.* at 143.

---

[1]By the April 28, 2016, hearing, only 60 days were attributable to the State. Assuming, *arguendo*, that the entire period from April 28 to June 20, 2016—a total of 54 days—should have been attributed to the State, defendant would have still been tried within the 120-day statutory period. Thus, in order to establish a speedy trial violation, defendant needs to prove at least one of the continuances made by defense counsel before the April 28, 2016, hearing should not be attributed to him.

¶ 31    Defendant argues that applying these principles here ignores the fact that defendants have a constitutional right to choose a speedy trial, even if it means sacrificing his right to effective assistance of counsel. In support of his argument, defendant cites *Bowman* (*id.* at 139-40), where the Illinois Supreme Court rejected the contention that a defendant should not have to choose between the right to competent counsel and a speedy trial. The *Bowman* court explained: "Defendant cannot contend that it was unfair to force him to choose between a speedy trial and effective assistance of counsel. Defendant may have a right, even of constitutional dimensions, to pursue whichever course he chooses, but the Constitution does not forbid requiring him to choose nonetheless." *Id.* at 148 (citing *People v. Lewis*, 60 Ill. 2d 152, 156-57 (1975)). Because the defendant in *Bowman* did not object to the appointment of counsel and delayed in objecting to the allegedly unauthorized waiver of his speedy trial right, the court found defendant contributed to the delay caused by the continuance. *Id.* at 142-43.

¶ 32    Defendant argues that, unlike the defendant in *Bowman*, he timely objected to trial counsel's decision to continue the case by vigorously objecting to counsel's actions and any continuances as soon as he learned that his attorney tolled the speedy trial period against his express wishes. He argues that the record shows (1) he expressed his desire for a speedy trial and to be present at all status hearings at his first appearance, (2) he filed a letter on March 31, 2016, indicating his desire for a speedy trial, (3) he explicitly told counsel from the outset that he wanted a speedy trial, and (4) his statements and actions subsequent to the April 28, 2016, hearing create an inference that he would have objected to the prior continuances. We disagree.

¶ 33    Defendant's contentions are not supported by the record. While defendant contends he asserted his speedy trial right at his first appearance prior to the arraignment, there is no report of proceedings for this appearance. It was defendant's duty, as the appellant, to present a complete

10

record on appeal. In the absence thereof, any doubts will be resolved against him. *People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000). Moreover, the December 16, 2015, court order fails to indicate any speedy trial demand or objection to any continuance. Even if defendant asserted his rights to the court off the record, defendant was required to submit a sufficient record on appeal, including a bystander's report or agreed statement of facts if necessary. *Kielminski v. St. Anthony's Hospital*, 68 Ill. App. 3d 407, 409 (1979); Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017). As such, the record does not show that defendant asserted his speedy trial rights immediately after being placed in custody.

¶ 34    There is also no indication—other than defendant's own allegations—that he filed a letter on March 31, 2016, indicating his desire for a speedy trial and counsel's poor communication. We disagree that the letter's absence was due to the court's refusal to file it as an *ex parte* communication. Rather, when defendant noted the letter should be in the file, the court simply explained that letters should not come to the judge because they are *ex parte* communications. However, the court never claimed that the circuit clerk refused to file the letter on such basis. Moreover, at the *Krankel* hearing, the court further explained that if defendant sent the letter to the clerk's office, it would have a file stamp on it, and there was no copy in the record. As to defendant's claims that he informed Mr. Peebles of his wishes, such conversations occurred outside of the record. Consequently, the record is void of any indication that counsel acted without defendant's authorization.

¶ 35    We also disagree with defendant's argument that *People v. Pearson*, 88 Ill. 2d 210 (1981), is instructive and allows this court to infer repudiation of counsel's continuances on February 8, 2016, March 1, 2016, and March 30, 2016, based on defendant's statements and actions on April 20, 2016, and thereafter. In *Pearson*, defendant filed a postconviction petition arguing, *inter alia*,

11

that certain continuances made by or agreed to by counsel—who withdrew prior to trial—should not be attributed to defendant, and defendant was deprived of his right to self-representation where he insisted on proceeding to trial *pro se* and objected to his previous counsel's requests for and/or acquiescence in continuance of his trial. *Id.* at 215. The Illinois Supreme Court determined that defendant clearly and convincingly attempted to assert his right to discharge his attorney and proceed to an immediate trial on July 20, August 19, and August 29, 1977. *Id.* Under such circumstances, it found that any continuance granted thereafter was not properly attributed to defendant. *Id.* It further found that although the record did not disclose whether defendant was present when counsel requested a continuance on August 11, 1977, "it is clear that, had defendant been in court, he would not have acquiesced in this delay either." *Id.*

¶ 36    The stark difference between this case and *Pearson* is defendant here did not raise any concern for his speedy trial right until after the disputed continuances were granted. He also never requested to proceed *pro se* or discharge Mr. Peebles. Accordingly, *Pearson* is distinguishable.

¶ 37    We find *Kaczmarek*, 207 Ill. 2d at 297, instructive. In *Kaczmarek*, the Illinois Supreme Court considered whether defendant's constitutional right to a speedy trial was violated where his retrial commenced over three years after the appellate court's mandate was filed. *Id.* at 295-96. During this period, defendant was represented by six attorneys—all of whom required time to familiarize themselves with the voluminous record—and there were 39 continuances by agreement of the parties and 3 continuances granted on defendant's motion. *Id.* Defendant first asserted his right to a speedy trial pretrial, but after the court warned of the dangers of proceeding with an attorney who was not prepared, defendant stated, "I'll wait." *Id.* at 298. Over a year later, defendant made an oral, *pro se* motion for discharge on statutory speedy trial grounds. *Id.* Defendant filed a written motion about a month later. *Id.* He was given the opportunity to argue his *pro se* motion,

12

but admitted he was not ready to do so and requested a continuance. *Id.* The court denied defendant's request for a " 'bar association lawyer.' " *Id.* Defendant later again requested a continuance of the hearing on his *pro se* motion because he was unprepared and there was never a ruling on the motion. *Id.* at 298-99. There also was no ruling on a second *pro se* motion for appointment of a " 'bar association attorney.' " *Id.* at 299.

¶ 38    When addressing the third factor of the constitutional test for a speedy trial violation—defendant's assertion of his speedy trial right—the court stated, "a defendant is bound by the actions of his attorney, unless the defendant clearly and convincingly asserts his right to discharge his attorney." *Id.* at 297. It also noted that defendant attempted to assert his right to a speedy trial at various times, but the decision to continue a case or demand a speedy trial is generally a matter left to the sound strategic decision of counsel. *Id.* at 297-98. The court recognized that the constitution does not forbid forcing a defendant to choose between a speedy trial and effective assistance of counsel (*id.* at 298) but found "[d]efendant never attempted to assert his right to discharge his attorney and proceed to an immediate trial" (*id.* at 299). As such, it found "[t]he record unequivocally shows that defendant wanted the assistance of counsel in preparing his defense for trial," and therefore "defendant is bound by the actions of his attorneys." *Id.*

¶ 39    As explained above, the record shows defendant first raised concern of his statutory speedy trial right when he filed his *pro se* motion on April 20, 2016. After the court raised defendant's *pro se* motion at the April 28, 2016, hearing, defendant indicated that he understood the court's calculation and did not object when the trial was scheduled for May 23, 2016. Defendant argues that his statement of understanding does not signify agreement with the court's calculation; however, like *Kaczmarek*, defendant here did not press the matter and seek a ruling on his motion. Importantly, defendant never attempted to discharge his attorney and proceed to an immediate

13

trial. Accordingly, defendant is bound by counsel's actions and cannot claim he did not contribute to the delay caused by the continuances. *Id.* at 298-99; *Bowman*, 138 Ill. 2d at 143.

¶ 40 Because defendant was bound by counsel's continuances, only 60 days were attributable to the State prior to April 28, 2016. Even assuming all continuances after April 28, 2016, could not be attributed to defendant, he was still tried within the statutory speedy trial period. His argument in this respect therefore fails.

¶ 41 B. Ineffective Assistance of Counsel Claim

¶ 42 Defendant alternatively asserts an ineffective assistance of counsel claim, arguing counsel caused him to allow the original statutory speedy trial period to lapse by misleading defendant into believing he would be tried with the statutory speedy trial period. A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. Although defendant requests *de novo* review (*People v. Bustos*, 2020 IL App (2d) 170497, ¶ 87), his claim is not raised for the first time on appeal as he presented this claim during the preliminary *Krankel* hearing, and the trial court determined the claim had no merit.

¶ 43 The Illinois Supreme Court's decision in *Krankel*, 102 Ill. 2d 181, developed a common-law procedure to address *pro se* posttrial claims of ineffective assistance of counsel. *In re Johnathan T.*, 2022 IL 127222, ¶ 23. "This procedure allows the trial court to decide whether independent counsel is necessary to argue a defendant's *pro se* posttrial ineffective assistance claims at a full *Krankel* [evidentiary] hearing." *Id.* Once a defendant raises a *pro se* posttrial ineffective assistance of counsel claim, the trial court must determine whether defendant's *pro se*

14

allegations show possible neglect of the case. *People v. Jackson*, 2020 IL 124112, ¶ 97. If the court finds the claims pertain to matters of trial strategy or lack merit, it need not appoint new counsel. *Id.* However, if the allegations show possible neglect, new counsel should be appointed to independently evaluate defendant's *pro se* claims and represent defendant at the *Krankel* evidentiary hearing on the *pro se* claims of ineffective assistance of counsel. *Id.*

¶ 44    In conducting this evaluation, the trial court may inquire into the facts and circumstances of the alleged ineffective assistance from counsel or defendant. *People v. Crutchfield*, 2015 IL App (5th) 120371, ¶ 29. The court can base its determination on "its knowledge of the defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* Defendant need only raise a colorable claim of ineffective assistance of counsel during the preliminary *Krankel* hearing to warrant further proceedings. See *People v. Cook*, 2018 IL App (1st) 142134, ¶ 104. We review the court's preliminary *Krankel* hearing determination for a manifest error. *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 45    Assuming, *arguendo*, that counsel misled defendant into believing counsel would not request or acquiesce in continuances, any prejudice is speculative. The failure to establish either prong of *Strickland v. Washington*, 466 U.S. 668, 694 (1984), precludes a finding of ineffectiveness. *People v. Easley*, 192 Ill. 2d 307, 318 (2000). To establish prejudice, "defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Strickland*, 466 U.S. at 694).

15

¶ 46　Defendant here does not argue prejudice under *Strickland* and instead requests this court to presume prejudice as in *People v. Mooney*, 2019 IL App (3d) 150607. We decline to follow *Mooney*, as it is inconsistent with Illinois Supreme Court precedent.

¶ 47　In *Mooney*, counsel twice continued the case—the second of which occurred on the date of trial due to the State's late discovery disclosure—although he informed the court that he was ready for trial. *Id.* ¶¶ 5, 7. The court found such actions objectively unreasonable under prevailing norms because the continuances were not factually attributable to defendant, where the first occurred after one of the State's witnesses was unavailable and counsel informed he was ready for trial and the second was caused by the State's late filing of discovery. *Id.* ¶¶ 23, 25.

¶ 48　*Mooney* found the issue of prejudice the more difficult question. *Id.* ¶ 26. The court admitted that "[d]etermining whether [a motion to dismiss based on a speedy trial violation] would be meritorious, had counsel not agreed to toll the speedy trial clock, inevitably involves a certain amount of speculation." *Id.* ¶ 27. It determined "there is no perfect way to reconstruct what would have happened had counsel acted appropriately." *Id. Mooney* relied on *People v. Beyah*, 67 Ill. 2d 423, 426, 428-29 (1977)—which outright reversed a defendant's conviction where the court improperly attributed a continuance to defendant resulting in a speedy trial violation—to come to the same conclusion regarding an ineffectiveness claim based on the failure to protect defendant's speedy trial right. *Mooney*, 2019 IL App (3d) 150607, ¶¶ 28-29. *Mooney* found "[t]o hold the inevitable speculation against a defendant would be to hold that counsel's actions in agreeing to the continuances or agreeing to toll the speedy trial clock are, essentially, unreviewable." *Id.* ¶ 30. We disagree.

¶ 49　While defendant only needs to show possible neglect at this stage of the *Krankel* proceedings (*Jackson*, 2020 IL 124112, ¶ 97), prejudice cannot be shown by mere conjecture or

16

speculation. *People v. Hills*, 78 Ill. 2d 500, 505-06 (1980). *Mooney* acknowledged that finding prejudice in that case required "a certain amount of speculation." *Mooney*, 2019 IL App (3d) 150607, ¶ 27. But, instead of adhering to the legal principles applicable to a prejudice analysis under *Strickland*, *Mooney* mistakenly relied on *Beyah* to presume prejudice.

¶ 50    *Beyah* involved a statutory speedy trial violation that stemmed from the court's error in incorrectly attributing a delay to defendant. *Beyah*, 67 Ill. 2d at 428. Because the court's error led to the speedy trial violation and defendant raised the issue before the lower court, such error was—at most—subject to harmless error review in which the State bears the burden of persuasion regarding prejudice and had to prove the result of the proceedings would have been the same absent the error. See *People v. Harris*, 2022 IL App (1st) 192509, ¶ 76. Defendant in *Beyah* therefore was not required to show prejudice. Conversely, the defendant in *Mooney*, and in this case, asserted ineffective assistance of counsel claims that required them to demonstrate prejudice. *People v. Johnson*, 2021 IL 126291, ¶ 53.

¶ 51    We acknowledge that the Illinois Supreme Court identified three exceptional circumstances when a court may presume prejudice from counsel's deficient performance. *People v. Cherry*, 2016 IL 118728, ¶ 25.[2] However, none were at issue in *Mooney* or argued in this appeal. Accordingly, presuming prejudice here is inappropriate. *E.g.*, *People v. Willis*, 235 Ill. App. 3d 1060, 1067, 1069 (1992) (required defendant to show prejudice for his ineffectiveness claim based on a violation of his speedy trial rights and rejected the claim where there was no showing of prejudice).

---

[2]The three circumstances in which prejudice is presumed are where (1) defendant is denied counsel at a critical stage, (2) counsel entirely fails to provide meaningful adversarial testing, or (3) counsel represents a client in circumstances under which no lawyer could prove effective assistance. *Cherry*, 2016 IL 118728, ¶ 25.

17

¶ 52 Defendant in no way claimed, and the facts do not support, that a reasonable probability exists that the result of the proceedings would have been different had counsel informed defendant that he intended to continue the case. There is no indication that the delay somehow negatively affected the ability to present his defense or provided some benefit to the State's prosecution. Further, defendant fails to argue, or explain, how the State would have failed to bring defendant to trial within the statutory period had defendant been able to object to the continuances. Because any argument of prejudice is speculative (see *People v. Johnson*, 2023 IL App (4th) 220833-U, ¶ 19),[3] the trial court's finding that defendant's claim lacked merit was not manifestly erroneous.

¶ 53                    C. *Krankel* Hearing

¶ 54 Defendant further argues that the trial court committed reversible error where it barred posttrial counsel from presenting any other claim of ineffective assistance of counsel than what the court deemed nonfrivolous at the preliminary *Krankel* inquiry. Whether the court conducted proper *Krankel* proceedings by limiting the claims presented at the evidentiary hearing to those claims it found had merit presents a legal question that we review *de novo*. See *People v. Cardona*, 2013 IL 114076, ¶ 15 (legal question is reviewed *de novo*); *Jackson*, 2020 IL 124112, ¶ 98 (reviewed whether a court properly conducted a preliminary *Krankel* hearing *de novo*).

¶ 55 The State argues that defendant did not preserve this argument by failing to object to the court's limitation. We disagree. First, the State has not provided, nor has this court found, authority for the position that a defendant forfeits any error in the *Krankel* procedures by failing to object. Further, the State's argument is factually inaccurate. After the preliminary *Krankel* hearing, the court took the matter under advisement. The court did not provide any type of limitation until June 1, 2017, when it explained which of defendant's claims had a sufficient basis. While *Krankel*

---

[3]Citing as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

counsel did not request the court to consider other claims at the *Krankel* evidentiary hearing, on April 11, 2018, defendant filed a *pro se* memorandum in which he complained that *Krankel* counsel was not allowed to evaluate all of defendant's claims and present any claim with arguable merit. This memorandum was filed after the *Krankel* evidentiary hearing and while the court still had jurisdiction. We therefore will consider defendant's arguments the court erred by both limiting the scope of the *Krankel* evidentiary hearing and preventing *Krankel* counsel from performing his duties.

¶ 56    The law is clear that appointment of *Krankel* counsel is not required in every case. *People v. Roddis*, 2020 IL 124352, ¶ 35; *People v. Jolly*, 2014 IL 117142, ¶ 29; *People v. Moore*, 207 Ill. 2d 68, 77 (2003); *People v. Nitz*, 143 Ill. 2d 82, 134 (1991). The court must appoint *Krankel* counsel only where the allegations show possible neglect of trial counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11 (citing *Jolly*, 2014 IL 117142, ¶ 29); *Nitz*, 143 Ill. 2d at 134-35. The court here appointed counsel for the claims that showed possible neglect. *E.g.*, *Nitz*, 143 Ill. 2d at 133. Counsel was only precluded from arguing the *pro se* claims the court found without merit. As such, the court did precisely what *Krankel* requires.

¶ 57    While defendant contends this situation is similar to postconviction proceedings where the entire postconviction petition advances to a second stage proceeding if any of the claims therein have merit (*People v. Montgomery*, 327 Ill. App. 3d 180, 189 (2001)), such rule is based on the plain language of the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)). *People v. Rivera*, 198 Ill. 2d 364, 370-72 (2001). There is no similar statutory support applicable here.

¶ 58    We further find defendant's cited authority—*People v. Horman*, 2018 IL App (3d) 160423, and *People v. Downs*, 2017 IL App (2d) 121156-C—distinguishable. *Horman* is inapposite, as it

did not address whether a trial court could limit the issues presented at an evidentiary hearing. Rather, *Horman* only found that the court was required to conduct an additional *Krankel* inquiry of defendant's claims raised after the court already conducted a preliminary *Krankel* hearing. *Horman*, 2018 IL App (3d) 160423, ¶¶ 29-30.

¶ 59 *Downs* also fails to support defendant's arguments. The *Downs* court found *Krankel* counsel's representation fell below the professional norm by failing to present one of defendant's nonfrivolous *pro se* ineffectiveness claims to the trial court. *Downs*, 2017 IL App (2d) 121156-C, ¶ 65. Defendant here, unlike *Downs*, attempts to reassert claims that the court already found without merit and additional claims not presented at the preliminary *Krankel* hearing. While, in explaining the duties of *Krankel* counsel, the *Downs* court broadly stated that *Krankel* counsel is required "to independently evaluate the defendant's *pro se* allegations of ineffective assistance of trial counsel and present those with merit to the trial court" (*id.* ¶ 49), we do not find this precludes a court from limiting *Krankel* counsel's representation to the claims it found meritorious.

¶ 60 We note defendants are not completely without recourse in this situation. Defendants may still challenge any preliminary *Krankel* determination on appeal, as defendant has done in this appeal for his claim regarding his statutory speedy trial rights, albeit unsuccessfully.

¶ 61 We further find the court did not prevent *Krankel* counsel from completing his duties by barring him from raising additional claims. Defendant again relies on *Horman* to argue that if the court there allowed defendant to raise additional claims after the preliminary *Krankel* hearing, *Krankel* counsel should be able to raise any additional claims he believed had merit.

¶ 62 The *Krankel* procedure was developed to address *pro se* posttrial claims of ineffective assistance of counsel. *Roddis*, 2020 IL 124352, ¶ 34. The appointment of different counsel avoids the conflict that trial counsel would have in trying to justify his or her actions while also presenting

20

defendant's claims of his or her ineffectiveness. *Id.* ¶ 36. "[T]he goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *Jolly*, 2014 IL 117142, ¶ 29. As such, *Krankel* imposes duties on appointed counsel only for defendant's *pro se* ineffective assistance of trial counsel claims. *Moore*, 207 Ill. 2d at 78; *Roddis*, 2020 IL 124352, ¶ 36. Counsel thus had no duty under *Krankel* to present additional claims. Moreover, because defendant is entitled to *Krankel* counsel only where he shows claims of possible neglect (*Roddis*, 2020 IL 124352, ¶ 35) and there was no such determination made for any claim not presented at the preliminary *Krankel* hearing, defendant has not yet shown that he is entitled to representation on such claims. We therefore fail to see how the court prevented counsel from completing his *Krankel* duties.

¶ 63    Defendant further argues that, because there is no rule precluding *Krankel* counsel from raising new claims, *Krankel* counsel here should have not been prevented from raising the additional claims he clearly wanted to present at the evidentiary hearing. However, the record is void of any evidence that *Krankel* counsel wished to raise additional claims.

¶ 64    During the questioning of Mr. Peebles at the evidentiary hearing, *Krankel* counsel inquired about the verdict forms used in this case. The court reminded counsel that the hearing was limited to the two issues regarding the lack of reviewed discovery and the lack of cross-examination as to Frison. *Krankel* counsel argued the verdict forms connected to Frison "in a broad sense." Although the court allowed *Krankel* counsel to continue questioning about the verdict forms to the extent that it was relevant to the two relevant issues, *Krankel* counsel moved on and questioned Mr. Peebles about his review of the case.

¶ 65    *Krankel* counsel's argument that the verdict forms broadly relate to a claim the court determined had merit falls short of requesting the court to consider an additional ineffectiveness claim. There is no indication in the record that *Krankel* counsel made any request to expand the scope of the hearing, present new ineffective assistance of counsel claims, or reconsider a previously rejected claim. Thus, the court did not prevent *Krankel* counsel from performing his duties.

¶ 66    We note that defendant is again not without recourse. He does not forfeit ineffectiveness claims not presented at the *Krankel* hearing. *People v. McGee*, 2021 IL App (2d) 190040, ¶ 41; see *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 26 (ineffective assistance of counsel claims may be brought for the first time on direct appeal); *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 14 (same). Accordingly, he may assert such claims on direct appeal or through the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)).

¶ 67                                III. CONCLUSION

¶ 68    For the foregoing reasons, defendant's speedy trial rights were not violated, the court's denial of defendant's *Krankel* claim that counsel misled defendant into believing that he would be tried within the statutory speedy trial period was not manifestly erroneous, and the court did not prevent *Krankel* counsel from performing his duties or improperly limit the *Krankel* evidentiary hearing. We therefore affirm the trial court's judgment.

¶ 69    Affirmed.

*People v. Teen*, 2023 IL App (5th) 190456

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 14-CF-914; the Hon. Zina R. Cruse, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Ellen J. Curry, and Richard J. Whitney, of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| **Attorneys for Appellee:** | Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Sharon Shanahan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |