NOTICE

Decision filed 08/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230226-U

NO. 5-23-0226

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 22-CF-170 |
| | ) | |
| ZACHARY E. TERRY, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction and sentence, where the State proved beyond a reasonable doubt that defendant reproduced child pornography depicting the transmission of semen by an adult male on the vaginal area of a female child, and the trial court did not err by failing to conduct a preliminary *Krankel* hearing.

¶ 2    Defendant, Zachary E. Terry, appeals his conviction and sentence following a bench trial for 19 counts of reproduction of child pornography involving a child under the age of 13 (720 ILCS 5/11-20.1(a)(2) (West 2020)). The trial court sentenced defendant to 8 years on each of the 19 counts, to run consecutively, for a total of 152 years in the Illinois Department of Corrections (IDOC), followed by 3 years to life of mandatory supervised release (MSR) on each count. Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of child pornography on counts XVII and XX, where the photos in evidence failed to show the alleged

1

conduct of the transmission of semen by an adult male on the vaginal area of a female child. Defendant additionally argues the trial court failed to address his posttrial claim of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). We affirm.

¶ 3                                    I. Background

¶ 4     After an initial indictment on May 19, 2022, the Stated filed an amended supplemental information on August 17, 2022, alleging that defendant, on or about January 27, 2022, and February 11, 2022, with the knowledge of the subject matter, reproduced a videotape, photograph or similar visual portrayal or depiction by computer, which included a female whom defendant knew or reasonably should have known was a child under the age of 13 engaged in an act of sexual penetration with an adult, specifically, performing oral sex on the adult male (counts I-II, IV, VI-XIII); digital penetration by the adult female (count III); transmission of semen by the adult male upon the female child's face (counts V and XVIII) and vaginal area (counts XVII, XIX-XX); and vaginal penetration with the adult male's penis (counts XIV-XVI) (720 ILCS 5/11-20.1(a)(2)), all Class X felonies. Specific to this appeal, defendant challenges counts XVII and XX, which depicted the transmission of semen by an adult male on the vaginal area of a female child.

¶ 5     The charges stemmed from a May 5, 2022, incident involving defendant and his two girlfriends, Makaila Murphy and Bryann Windland. Officer Shyla Kunick of the Mt. Vernon Police Department responded to a domestic violence incident. Murphy informed Officer Kunick that she saw defendant and Windland having sex while defendant viewed a photo of his infant child in the bathtub on his phone. Murphy, the mother of the infant child, confronted defendant and a fight ensued. Officer Kunick arrested defendant for aggravated domestic battery. Murphy told Officer Kunick she thought the image of their child in the bathtub constituted child pornography. Officer Kunick responded that it likely was not child pornography, but explained the

parameters of child pornography and told Murphy to contact her if she found any evidence of it. Murphy later contacted law enforcement about potential child pornography on a laptop. Law enforcement seized two devices belonging to defendant which were later found to contain child pornography.

¶ 6    Defendant's bench trial began on September 27, 2022. Officer Kunick testified that she responded to a domestic violence incident on May 5, 2022, between defendant and his two girlfriends, Murphy and Windland. Murphy and Windland reported an "ongoing domestic violence situation with [defendant] as the offender." Officer Kunick arrested defendant for aggravated domestic battery. Defendant held a red and black cell phone in his hand at the time of the arrest, which Officer Kunick collected as part of defendant's property to be returned upon his release from the jail. On May 11, 2022, Murphy called Officer Kunick and informed her that she found child pornography on defendant's laptop. Murphy and Windland gave Officer Kunick permission to seize the laptop. Officer Kunick then contacted Detective Captain Bobby Wallace.

¶ 7    Detective Captain Bobby Wallace of the Jefferson County Sheriff's Office testified that he was a supervisory detective and was also assigned to the Homeland Security Investigations' Child Exploitation Unit and the Illinois Attorney General's Office Internet Crimes Against Children Task Force. On May 11, 2022, Officer Kunick spoke with Detective Wallace regarding defendant's laptop. Following the conversation, Detective Wallace secured defendant's laptop and cell phone, applied for a search warrant for the devices, and then performed data extractions and analyses on both devices. On the cell phone, he located files that he believed constituted child pornography and selected 20 images as the basis to file charges against defendant. On the laptop, he identified 18 of the 20 files which corresponded to the images found on the cell phone.

3

¶ 8 Detective Wallace then testified to the contents and corresponding reproductions of each image as it pertained to a certain charged count. Relevant to this appeal, Detective Wallace described the images relating to counts XVII and XX. Detective Wallace testified that People's Exhibit 9(ff) was the image forming the basis for count XVII, and that the image:

> "depicts what appears to be a small child laying down, and above the child is a male. It appears the male is holding his penis and there—in the actual photo itself appears that there is ejaculate from the male on the lower part of the chest and vaginal area of the child."

Detective Wallace testified that People's Exhibit 9(kk) was the image forming the basis for count XX, and that the image: "depicts what appears to be a small child. Above the small child it looks like an adult male who is holding his penis, and there appears to be ejaculate on the lower stomach area/vaginal area of that child ***."

¶ 9 Detective Wallace further testified that he interviewed defendant on May 11 and May 18, 2022. In the interviews, defendant stated that Windland put an SD card into his cell phone which downloaded child pornography to it. However, Detective Wallace informed defendant that he searched both Murphy and Windland's devices and found no evidence of child pornography, while finding 266 files of child pornography on defendant's cell phone. Defendant then claimed he accidentally downloaded child pornography while attempting to download a PDF of the owner's manual for his car. Defendant eventually admitted that he took photographs with his cell phone of child pornography displayed on another device.

¶ 10 The trial court issued its decision on October 13, 2022, after reviewing the evidence and testimony. The court found defendant guilty on 19 of the 20 charged counts. The court found defendant not guilty of count III because the image did not show what the charging instrument alleged. On December 15, 2022, the trial court sentenced defendant to 8 years on each of the 19

4

counts, to run consecutively, for a total of 152 years in IDOC, followed by 3 years to life of MSR on each count.

¶ 11    On January 4, 2023, defendant filed a motion to reconsider sentence, which the trial court denied on April 6, 2023. On January 19, 2023, while the motion to reconsider sentence was pending, defendant filed a *pro se* motion for extension of time to prepare and file a direct appeal due to "non contact with counsel, [and] limited access to [the] law library." The court did not address defendant's *pro se* motion before denying the motion to reconsider sentence. Defendant timely appealed.

¶ 12                                    II. Analysis

¶ 13    On appeal, defendant contends that the State failed to prove defendant guilty beyond a reasonable doubt on counts XVII and XX, where the photos in evidence failed to show "that semen was transmitted onto the vaginal area of the child." Defendant additionally argues that the trial court failed to address defendant's posttrial claim of ineffective assistance of counsel, pursuant to *Krankel*, 102 Ill. 2d 181, after defendant raised in his *pro se* motion potential communication issues with his attorney. The State rebuts that the evidence in counts XVII and XX was sufficient to prove defendant guilty beyond a reasonable doubt and that the trial court did not err in failing to conduct a *Krankel* inquiry. We agree with the State.

¶ 14    First, defendant contends that the State failed to "prove that the reproduced photographs [in counts XVII and XX] showed that semen was transmitted on to the vaginal area of the child." Defendant argues that the images show a "white reflection" but that the State and trial court's inference that it was ejaculate was unreasonable. Five of the counts that defendant faced alleged to show the transmission of semen, and defendant contends that three of the images "clearly show

5

semen in the photographs," but the "white reflection" in the images charged in counts XVII and XX "does not look like the semen shown in the other counts."

¶ 15    "When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64 (citing *People v. Jackson*, 232 Ill. 2d 246, 280 (2009)). The reviewing court does not retry defendant (*id.* (citing *People v. Evans*, 209 Ill. 2d 194, 209 (2004))), but instead reviews challenges to the sufficiency of the evidence deferentially. *People v. Davison*, 233 Ill. 2d. 30, 42 (2009). Under this standard, the trier of fact is responsible to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence and facts. *Jackson*, 2020 IL 124112, ¶ 64 (citing *People v. Howery*, 178 Ill. 2d 1, 38 (1997), quoting *Jackson v. Virginia*, 443 U.S. 307, 309 (1979))). A reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id.* (citing *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009)). "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.* (citing *People v. Belknap*, 2014 IL 117094, ¶ 67). "[T]he trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281.

¶ 16    The charging instrument listed counts XVII and XX as follows:

> "That on or about January 27, 2022, in said County and State, **ZACHARY E. TERRY** committed the offense of **CHILD PORNOGRAPHY**¸ in that he, with the knowledge of the subject matter thereof, reproduced a videotape, photograph or similar visual portrayal or depiction by computer, which includes a female child whom the

6

defendant knew or reasonably should have known was a child under the age of 13, which did show the female child actually engaged in an act of sexual conduct with an adult male, being the transmission of semen by the adult male upon the vaginal area of the juvenile, all in violation of 720 ILCS 5/11-20.1 (a)(2). A **Class X felony**. ***"

¶ 17    Detective Wallace testified that People Exhibit's 9(ff) was the image forming the basis for count XVII, and that the image:

> "depicts what appears to be a small child laying down, and above the child is a male. It appears the male is holding his penis and there—in the actual photo itself appears that there is ejaculate from the male on the lower part of the chest and vaginal area of the child."

Detective Wallace testified that People's Exhibit 9(kk) was the image forming the basis for count XX, and that the image: "depicts what appears to be a small child. Above the small child it looks like an adult male who is holding his penis, and there appears to be ejaculate on the lower stomach area/vaginal area of that child ***." Defendant asserts that while "both photographs at issue do show a child, with a penis near the child's body," "there is no evidence that shows any emission of semen as the State has alleged."

¶ 18    The State contends that Detective Wallace's description was accurate. In its brief, the State argues that both photographs depict "a young female child lying down on a bed with an adult male standing over her holding his penis." The State maintains that, in both photographs, there "appears to be a glistening, white substance, which can be reasonably inferred to be ejaculate, directly beneath the man's penis" on the child's thigh and vaginal area (count XVII) and the child's vaginal area (count XX). The State further argues that the trier of fact—in this case, the trial court—was "allowed to draw all reasonable inferences from the evidence presented before it." *Jackson*, 232 Ill. 2d at 281. The State contends that the trial court could reasonably infer that the images depicted seminal fluid where the "female children are both depicted in uniquely sexual poses" and "the adult males are holding erect penises, suggestive of sexual stimulation or gratification, in a position very proximate to the sexual organs of the depicted young females."

7

¶ 19    After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 2020 IL 124112, ¶ 64. We agree with the State that Detective Wallace accurately described the charged images that formed the basis for counts XVII and XX, and that the trial court could reasonably infer from the evidence presented that the images depicted seminal fluid. The trial court was free to make a reasonable inference that the glistening, white substance depicted in the images was seminal fluid or ejaculate. We find nothing improbable or unsatisfactory about the evidence sufficient to create a reasonable doubt as to defendant's guilt in counts XVII and XX. The trial court's careful consideration of the evidence is demonstrated by its finding that the image forming the basis of count III did not meet the conduct charged and therefore found defendant not guilty of this count. The trial court carefully examined the evidence presented, considered the State's burden, and drew reasonable inferences from the evidence, and we thus decline to substitute our judgment for that of the trial court. Therefore, we affirm defendant's convictions in counts XVII and XX.

¶ 20    Defendant next argues that the trial court erred by failing to conduct a *Krankel* inquiry after defendant's *pro se* motion for extension of time sought additional time to prepare and file a direct appeal due to "non contact with counsel, [and] limited access to [the] law library." The State argues that this claim of "non contact with counsel" is insufficient to trigger a preliminary *Krankel* inquiry. We agree with the State.

¶ 21    "[W]e review a trial court's alleged failure to inquire into whether defense counsel provided effective assistance *de novo*." *People v. Bates*, 2019 IL 124143, ¶ 14. " '[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention.' " *Id.* ¶ 15 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)). A defendant can do so by filing a

8

written motion (*People v. Patrick*, 2011 IL 111666, ¶ 29), making an oral motion (*People v. Banks*, 237 Ill. 2d 154, 213 (2010)), or giving the trial court a note or letter (*People v. Munson*, 171 Ill. 2d 158, 200 (1996)). "[W]hen a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing, this is sufficient to trigger the trial court's duty to conduct a *Krankel* inquiry." *People v. Ayres*, 2017 IL 120071, ¶ 18.

¶ 22     Here, while his January 4, 2023, motion to reconsider sentence was pending, defendant filed his *pro se* motion for extension for time seeking additional time to prepare and file a direct appeal due to "non contact with counsel, [and] limited access to [the] law library." We find that this did not constitute a clear claim of ineffective assistance of counsel or express dissatisfaction with counsel's performance sufficient to trigger a preliminary *Krankel* inquiry.

¶ 23     Defendant cites *People v. Teen*, 2023 IL App (5th) 190456, and *In re Johnathan T.*, 2022 IL 127222, in support of his contention that defendant's *pro se* motion listing "non contact with counsel" should trigger an inquiry. We find these cases distinguishable. In *Teen*, the defendant filed *pro se* motions claiming ineffective assistance of counsel and the defendant told the trial court "he also had other claims." 2023 IL App (5th) 190456, ¶ 13. The defendant in *Teen* also stated that he wrote a letter to the court and "averred that the letter addressed the inability to speak with his attorney, and the attorney's failure to bring him to the status conferences after defendant told counsel he wanted to go." *Id.* ¶ 14. In *In re Johnathan T.*, 2022 IL 127222, ¶ 7, the juvenile defendant expressed dissatisfaction with his attorney during a social investigation report interview, stating: "We don't talk. I'm never prepared for the stand. He does not answer my calls."

¶ 24     Here, defendant merely sought an extension of time and his reasons for requesting such were that he had yet to speak with his attorney and lacked access to the law library. While it is not necessary for a defendant to use the words "ineffective assistance of counsel" or even explicitly

state he is dissatisfied with counsel's performance (*In re Johnathan T.*, 2022 IL 127222, ¶ 53 (quoting *People v. Banks*, 2021 IL App (5th) 190129-U, ¶ 30 (Wharton, J., dissenting))), we do not find defendant's listed reason for seeking an extension of time rises to the level of a "clear claim" like those found in *Teen* or *In re Johnathan T*.

¶ 25    The State points out that defendant filed this *pro se* motion while the motion to reconsider sentence was still pending. The State argues that this renders defendant's motion premature. While the State's argument is technically true, we do not find it affects our analysis of the *Krankel* issue. However, we do note that on February 28, 2023, defense counsel filed a motion to continue the status hearing which the trial court granted, thus affording defendant more time to prepare, speak with his attorney, and access the law library. We agree with the State that defendant's "non contact" claim is less a complaint about counsel's performance and more a statement of fact supporting his request for an extension of time. Not every mention of attorney-client communication should be elevated to a *Krankel* issue. Accordingly, we conclude that the trial court did not err by failing to conduct a preliminary *Krankel* inquiry.

¶ 26                                              III. Conclusion

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Jefferson County.


¶ 28    Affirmed.